No. 1,905.

| 39 | 345 |
| 77 | 574 |
| 39 | 345 |
| 83 | 179 |

SAMUEL POORMAN, Appellant, *v.* D. O. MILLS & CO., Respondents.

NEGOTIABLE INSTRUMENTS.—AMBIGUITY.—In a negotiable instrument a patent ambiguity cannot be helped by averment or evidence *aliunde.*

IDEM.—The words written in the body of a certificate of deposit, bill or note, when plain, definite and certain, must control, without regard to the superscription in figures.

IDEM.—MISTAKE AND WANT OF CONSIDERATION.—An alleged mistake and want of consideration in a negotiable note or bill will not avail the makers in a suit against them by a *bona fide* indorsee for value before maturity or dishonor, actual or constructive, or by any subsequent holder through such original indorsee.

IDEM.—A negotiable note or bill indorsed and transferred to a *bona fide* holder for value, without notice, by the payee thereof before maturity or dishonor, actual or constructive, is relieved of all equities existing between the drawer or maker and the payee; and any subsequent assignee receives the same in like manner, relieved of all such equities.

IDEM.—DISHONOR.—A sight bill or note, payable on demand, is presumed to be dishonored after a reasonable time shall have elapsed after its date.

IDEM.—What such reasonable time is, depends upon the circumstances of each case, and is a question of law to be determined by the Court.

IDEM.—A note on demand, indorsed or transferred during the business hours of the next day after its date, is within a reasonable time, and the holder protected as indorsee before maturity or presumptive dishonor.

IDEM.—ACT TO PROHIBIT GAMING.—The indorsement and transfer of a note or bill in rooms occupied for gambling purposes, and in a gambling transaction, is not void under the "Act to prohibit gaming," unless the consideration for such indorsement and transfer was money or other thing of value lost or won at any of the games prohibited by the statute.

FRAUDULENT ACT—LIABILITY FOR.—When one of two innocent parties must suffer loss by the fraudulent act of a third, he who enables such third party to occasion the loss must bear it.

CAL. REP. XXXIX.—44.

APPEAL from the District Court of the Sixth District, Sacramento County.

The facts are stated in the opinion.

*Coffroth & Spaulding*, for Appellant.

The proceeding was strictly an action "at law," and the matters stated in the answer, and such as were proven on the trial, would have constituted no defense, and would have been wholly irrelevant and immaterial, even though the original payee of the certificate had been the party plaintiff in the action.

Whatever be the superscription, the *words* or figures used in the body of the note or contract are to govern, for the reason that the first is only a memorandum, while the latter is part of the contract. (Edwards on Bills and Notes, 152, 153, 168; 1 Parsons on Notes and Bills, 26, 27.)

Parol evidence is ineffectual, in an action at law, to show that the sum stated in the superscription, and not the sum stated in the body of the contract, is the true sum. (*Sanderson* v. *Piper*, 5 Bingham New Cases, 425; 19 Missouri, p. 152; *Means* v. *Graham*, 8 Blackford; 13 Conn. 281, 289; 9 Cushing, 49; 21 Cal. 122.)

If respondents had any remedy, even as against the payee of the certificate, it would be in equity to cancel or correct it upon the ground of mistake.

To blend the matters of defense at law and the matters upon which the equities are founded, in an answer, in one indistinguishable mass, and submit the whole to a jury, in an action of ejectment, certainly is a practice that our system does not tolerate; and the objections to such a course of procedure in cases like the one at bar, are equally potential. (*Arguello* v. *Edinger*, 10 Cal. 150; *Lestrade* v. *Barth*, 19 Cal. 660; *Estrade* v. *Murphy*, 19 Cal, 248; *Meador* v. *Parsons*, 19 Cal, 294; *Blum* v. *Robertson*, 24 Cal. 146; *Downer* v. *Smith*, 24 Cal. 124; *Davis* v. *Davis*, 26 Cal. 38.)

In substance and effect, a certificate of deposit is a promissory note, payable on demand, and the rules applicable to the negotiability of the one apply to the negotiability of the

other. (*Brummagim* v. *Tallant*, 29 Cal. 506; Parsons on Contracts, Vol. I, p. 26; *Bank of Peru* v. *Farnsworth*, 18 Ill. 563; *Carey* v. *McDougal*, 7 Ga. 84; *Miller* v. *Austin*, 13 How. 218.)

Where a note on demand is indorsed within a reasonable time after its date, the indorsee has all the rights of a negotiable note on time, where the indorsement was made before maturity. (1 Parsons on Contracts, 3 vol. ed. 259, 260; *Sylvester* v. *Crapo*, 15 Pick. 93; *Camp* v. *Scott*, 14 Vt. 387; *Sandford* v. *Mickles*, 4 Johns. 224.)

This certificate was indorsed and delivered on the very day it was made, and, as matter of law, within a reasonable time. (See authorities above cited, and particularly C. J. Shaw's opinion in *Sylvester* v. *Crapo*, 15 Pick. 93.)

It will be contended that as the certificate was assigned to in a gambling transaction, that fact will be sufficient to let in the equities of the maker against the payee; and respondents may seek to avoid the effect of the assignment under the provisions of the "Act to prohibit gaming."

This applies to the consideration of the notes, etc., and not to the consideration for the assignment of the same. "*Expressio unius est exclusio alterius*," is a leading maxim in the construction of statutes.

The burden of proof was on respondent to show that the consideration of the assignment was for money lost at play, in one of the games enumerated in the statute, and there was a total failure of such proof.

The weight of authority is, that the transfer of a negotiable instrument, in payment of a debt already due, is for a valuable consideration, and entitles the holder to protection. (1 Parsons on Contracts, 3 vol. ed. p. 258; *Swift* v. *Tysen*, 16 Peters, 1; *Bank of Salina* v. *Babcock*, 21 Wend. 499; *Coolidge* v. *Payson*, 2 Wheaton, 66; *Holmes* v. *Snyth*, 16 Maine, 177; *Bush* v. *Scribner*, 11 Conn 388.)

The fact of the assignment being shown, the law presumes that it was made in good faith and for a valuable consideration. (*Swift* v. *Tysen*, 16 Peters, 1.)

In this case, the rule invoked requires but one thing, to wit: that the party takes in good faith. (Stats. 1863, p. 725.)

Was the certificate properly transferred to him within a reasonable time?

Was it received without notice that "the consideration for the assignment was money lost at play?"

If both these questions are answered in the affirmative, the plaintiff is a "*bona fide*" holder, and the case is not within the "Gaming Act."

The law raises the presumption that the transfer was *bona fide*, and for a valuable consideration, and this presumption has not been rebutted by proof.

*Robert Robinson*, for Respondents.

The instrument sued on is only likened to a note so far as its negotiability is concerned. (*Welton* v. *Adams & Co.* 4 Cal. 40.)

This being payable on presentation, makes it a sight bill, and it is not entitled to grace. (7 Hittell, Art. 441.)

The money, then, was due immediately, and any defense against the payee can be set up against the holder.

The statute, I Hittell, Articles 372, 375 and 376 fully authorized the defense set up in this case. (*Brummagim* v. *Tallant*, 29 Cal. 506.)

But suppose the instrument was not due at the time of the assignment. It requires something more than this to entitle the holder to take it free of equities.

It must have been received for a valuable consideration, then paid for it. It was assigned in a gambling room and paid for chiefly in gambling checks.

The plaintiff was in the same house in the same evening, and received the certificates without any consideration whatever, and he is peremptorily charged with notice that it was a gambling transaction.

Notes not received in the usual course of trade, and for a *present* consideration, do not entitle the holder to recover against the equities, and the existence of a prior indebtedness will not help the holder. (*Coddington* v. *Ray*, 20 J. R. 638.)

The maker may set up any defense against the holder which he could against the payee, unless he has advanced

money or property or incurred a liability at the time of receiving it. A prior indebtedness will not help him. (*Payne* v. *Cullen,* 13 Wend. 605.)

Again, this certificate is tainted with a gambling transaction, and would not have been good in the hands of the first indorsee, and it cannot be any better in the hands of the plaintiff, unless he paid a present value for it.

Parties who received a note which has been improperly put in circulation in payment of an existing debt, without parting with any value for it at the time, or surrendering any security, are not *bona fide* holders, and are subject to the rights of the maker. (*Spear et al.* v. *Myers,* 6 Barb. 445, and the authorities cited.)

This doctrine is fully decided in 6 Hill, 95, and cases cited.

For the reasons given in these authorities, we say that any defense of the motion is good against him to the extent of $750. We tendered the $750 due on demand, and kept the tender good in Court.

SPRAGUE, J., delivered the opinion of the Court, TEMPLE, J., and RHODES, C. J., concurring :

This is an action by an assignee against the makers of a certificate of deposit, for the sum of $1,500 in United States gold coin, which is set out in the complaint, as follows :

"$750.          BANK OF D. O. MILLS & Co., ⎱
                      "Sacramento, October 18, 1866. ⎰

"George Rosenbaum has deposited in this bank $1,500, payable to himself or order, in United States gold coin, on return of this certificate properly indorsed.

"D. O. MILLS & Co."

This instrument possesses all the requisites of a negotiable promissory note, payable on demand—and with respect to the questions involved in the suit, must be regarded and treated as such.

The answer substantially admits the execution of the certificate, as charged in the complaint; denies that the plain-

tiff is the *bona fide* or legal owner or holder thereof; avers
want of consideration for its issuance, exceeding the sum of
$750; and that the words "fifteen hundred" were inserted
and written in the body of the certificate by mistake and
inadvertence, in place of the words "seven hundred and
fifty," which were intended to be, and should have been,
written thereon—of which mistake plaintiff had notice when
he received the same; and further avers, that the certificate
was issued for and on deposit of $750; and that the payee
thereof received the same for and as a certificate of deposit
for $750 only—which sum defendants tendered to plaintiff
on the presentation of the certificate; and further deny
generally the allegations of the complaint. The case was
tried by the Court without a jury; and, without making any
finding of facts, the Court rendered judgment against defend-
ants for $750. Plaintiff, upon statement, moved for a new
trial, which being denied, he appeals from the judgment
and order denying a new trial. There is no conflict in the
evidence as found in the record.

The certificate is to all intents and purposes a certificate
for $1,500 in gold coin. The superscription on the upper
left hand corner, in figures, is but a memorandum, and in
no manner serves to vary, change, modify or control, the
written words found in the body of the certificate, which
distinctly specify the sum, for which the certificate is issued,
to be $1,500. The most that can be claimed for this memo-
randum, in figures, is that its presence on the face of the
certificate, serves to create a patent ambiguity; but this
cannot be helped by averment, or evidence *aliunde*. The
words written in the body of a certificate, bill or note, when
plain, definite and certain, must control, without regard to
the superscription in figures. (Chitty on Bills, 11 Am. from
9 Lond. ed. pp. 149–160; Story on Bills, Sec. 42; Story on
Prom. Notes, Sec. 21; *Saunderson* v. *Piper*, 5 Bing. N. Cas.
425; *Mears* v. *Graham*, 8 Blackf. 144; *Payne* v. *Clark*, 19
Mo. 152.)

Although the mistake and want of consideration alleged
in the answer, might be available as a defense *pro tanto*, as
between the makers and the original payee, or an indorsee

of the payee after maturity or dishonor, actual or constructive, or a holder *mala fide*, by indorsement from the payee before maturity or dishonor, such defense would not be available in a suit against the makers by a *bona fide* indorsee for value before maturity or dishonor, actual or constructive, or any subsequent holder through such original indorsee. Nor would such defense be available to the makers in a suit, by a subsequent *bona fide* holder, after the certificate had been indorsed by the payee, in blank, and delivered to a *mala fide* indorsee before dishonor.

A negotiable bill or note, indorsed and transferred to a *bona fide* holder for value, without notice by the payee thereof, before maturity or dishonor, actual or constructive, is relieved of all equities existing between the drawer or maker and the payee, and any subsequent assignee receives the same in like manner, relieved of all such equities. (Story on Bills of Ex. Secs. 187–188; Story on Prom. Notes, Sec. 178, and authorities there cited; 3 Kent Com. * 92, top page 113; *Chalmers* v. *Lanion*, 1 Camp. 383.)

A note payable at a particular time, is presumed to be dishonored after maturity. A sight bill or note payable on demand, is presumed to be dishonored after a reasonable time shall have elapsed after its date, and if indorsed and transferred before such reasonable time has elapsed, the indorsee and holder *bona fide*, for value takes the same, relieved of all equities existing between the original parties thereto. What such reasonable time is, depends upon the circumstances of each case, and is a question of law to be determined by the Court. (Chitty on Bills, p. * 379; Story on Bills of Ex. Secs. 232, 325; Story on Prom. Notes, Sec. 207, Note 1; 1 Parsons on Contracts, 2d ed. p. 217, Note—; 1 Parsons on Notes and Bills, pp. 264–266.)

Although the maker of a negotiable promissory note, payable on demand, at common law is liable to a suit thereon, the moment after the same is executed and delivered, and the Statute of Limitations immediately commences to run against such note, still, it is not regarded as overdue or presumptively dishonored, until the lapse of a reasonable time after its date; and we have been unable to find any case

where, under any circumstances, if such note be indorsed and transferred at any time during the business hours of the next day after its date, such time has not been adjudged within a reasonable time, and the holder protected as an indorsee before maturity or presumptive dishonor.   (*Weeks* v. *Pryor*, 27 Barb. 80 ; *Ranger* v. *Cary*, 1 Met. 373 ; *Seaver* v. *Lincoln*, 21 Pick. 268 ; *Parker* v. *Tuttle*, 44 Maine, 467 ; *Dennen* v. *Haskell*, 45 *Id.* 430 ; *Carlton* v. *Bailey*, 7 Foster, 234 ; *Emerson* v. *Crocker*, 5 N. H. 162 ; *Culver* v. *Parish*, 21 Conn. 408; *Martin* v. *Winslow*, 2 Mason U. S. C. C. 242 ; *Carll* v. *Brown*, 2 Mich. 401; *Atlantic De L. Co.* v. *Tredick*, 5 R. I. 179 ; *Wethey* v. *Andrews*, 3 Hill, 582 ; *Camp* v. *Clark*, 14 Vt. 390 ; *Dennett* v. *Wymans*, 13 *Id.* 489 ; *Sylvester* v. *Crapo*, 15 Pick. 92 ; *Sanford* v. *Mickles*, 4 John. 227.)

In the present case, the certificate was indorsed in blank, and transferred by the payee on the same day of its date, and on the evening of the same day, after dark, was, by the first indorsee, delivered to plaintiff, with instructions to credit the same to the account of Ewing M. Skaggs, which plaintiff did, on the following morning, about eight o'clock, October 19th, by crediting Ewing M. Skaggs in account, who was then indebted to him in the sum of $200, with $1,500, and thereafter, during the forenoon of the same day, presented the certificate to defendants for payment.   At the time the certificate was indorsed and delivered to Eli M. Skaggs, on the 18th of October, no sufficient time had elapsed since its date, to authorize a presumption of dishonor ; hence, the special defense set up in the answer could not avail, as in case of indorsement after maturity and dishonor.

The question then arises, whether Eli M. Skaggs, the first indorsee, was a *bona fide* holder for value.

On the cross-examination of plaintiff's witnesses, by defendants, it appeared that the payee indorsed and delivered the certificate to Eli M. Skaggs, at the rooms of said Skaggs, in the City of Sacramento, which rooms were occupied by said Skaggs for gambling purposes ; that his business was gambling, and that the assignment was made in a gambling transaction ; that Skaggs paid for the certificate

$100 in money, and $1,400 in ivory checks; and that previous to such transfer of the certificate, by the payee, he had been playing.  Upon this evidence it is claimed by the respondents, that the indorsement and transfer to Eli M. Skaggs was void under a statute of this State, entitled "An Act to prohibit gaming." (Stats. 1863, p. 723.)  But the evidence entirely fails to establish that the consideration for such indorsement and transfer was money or anything of value, *lost* by the payee or *won* by the indorsee, or any other person or persons, at any of the prohibited games or any banking game played with cards, dice or any other device; or, that the money or ivory checks, received by the payee in consideration of such transfer, was by him afterwards lost, or in any manner hazarded at any prohibited game, or any other game of chance whatever; hence, the indorsement and transfer cannot be adjudged void, on the ground that the consideration therefor was money, or anything lost or won at a prohibited game.  So far as the evidence discloses the consideration for the transfer, it was a valuable consideration, and the first indorsee received the certificate without notice, actual or constructive, of any infirmity or existing equity in favor of the makers; and, as between him and the makers, the special defenses set up in the answer, could not have been made available, and they cannot, therefore, be made available as against the present plaintiff, whatever the consideration may have been for the subsequent transfer to him.

The evidence very clearly establishes, that the certificate was issued by the defendants, upon the deposit with them by George Rosenbaum, of $750 only, and that the sum stated in the body of the certificate as the amount deposited, was by defendants inadvertently and by mistake written $1,500, instead of $750; and this the payee of the certificate must have known, when he indorsed and transferred the same to the first assignee, on the afternoon of the day of its date; but the defendants, by their mistake and inadvertence, furnished him the means by which he was enabled to perpetrate a fraud upon innocent parties, if the special defense set up in the answer should prevail against the well settled princi-

ple, that whenever one of two innocent parties must suffer by the act of a third, he who enabled such third party to occasion the loss, must bear it.

It follows from these views, that the evidence fails to sustain the judgment; and that the judgment and order denying a new trial, must be reversed and a new trial granted.

So ordered.

CROCKETT, J., delivered the following opinion, WALLACE, J., concurring:

I concur in the judgment, on the ground that the proof fails to show that the certificate was lost by Rosenbaum at any of the games prohibited by the Act of 1863, and that Eli M. Skaggs, when he received it, had notice of that fact. If it had appeared on the trial, that Rosenbaum was engaged in one of the prohibited games, and had lost the certificate in that manner, and that Skaggs had notice of this fact when he took it, he was not a purchaser in good faith, and the defendants could have made, as against the plaintiff, any defense they could have made as against Rosenbaum.