[No. 10376.  Department Two.  June 20, 1912.]

GRACE N. CATTON, *Respondent*, v. WILBUR F. CATTON *et al.,*
*Appellants.*[1]

DIVORCE—DECREE—DISPOSITION OF REAL PROPERTY — VENUE OF
ACTION.  In a divorce action, commenced in the county where the
plaintiff resides, under Rem. & Bal. Code, § 984, the court has juris-
diction to dispose of real property situated in another county, where
it is described in the complaint, under Id., § 989, authorizing the
court to dispose of any property of the parties; and Id., § 204, pro-
viding that actions to recover real estate shall be brought in the
county where the subject is situated, does not apply.

GAMING—CONTRACTS—MONEY LOANED—HUSBAND AND WIFE—COM-
MUNITY DEBT.  Money loaned to a husband for the express purpose
of gambling in futures in a manner prohibited by law cannot be
recovered either from the husband or the community, and is there-
fore not a community debt.

Appeal from a judgment of the superior court for King
county, John S. Jurey, Esq., judge *pro tempore,* entered
August 31, 1911, upon findings in favor of the plaintiff, in
an action for divorce.  Affirmed.

*Stallcup & Keyes,* for appellants.
*Julius L. Baldwin,* for respondent.

MOUNT, J.—The plaintiff brought this action on Febru-
ary 15, 1911, for a divorce from her husband.  The action
was brought in the superior court of King county, where the
plaintiff resided.  It was alleged in the complaint that the
community owned certain described real estate in Grant
county, certain other described real estate in Pierce county,
and also certain described personal property in King and
Pierce counties, all in this state, all of which property was
community property.  The prayer, among other things, was
for a restraining order to prevent the defendant Catton from
disposing of any of the property.  A temporary restraining

[1]Reported in 124 Pac. 387.

order was accordingly issued. The defendant Catton was not served with process until February 18, 1911. On the 16th day of February he transferred his personal property in Pierce county to one Shrewsbury, and on February 17, 1911, he was sued by John J. Reehling in Pierce county, upon two promissory notes aggregating $1,700. He immediately confessed judgment, and execution was thereupon issued and levied upon the community property of the plaintiff and defendant Catton in Pierce county. On the next day, the defendant Catton was served with process in this action. Thereafter on March 10, 1911, the plaintiff filed a supplemental complaint, which brought Shrewsbury, Reehling and the sheriff of Pierce county into the case as parties defendant, and these parties were restrained from disposing of the property.

Upon a trial of the case, the court granted a decree of divorce to the plaintiff, and awarded her certain property. The court found, that the transfer of the personal property to Shrewsbury was fraudulent and void as to the plaintiff; that the notes upon which the action was brought by Reehling against defendant Catton in Pierce county were given for money which was "borrowed and used by said Catton for his separate use and not at all for the community of plaintiff and said Catton; that most or all of said money was borrowed and used for speculation in options and futures on stock and produce; that none of it was borrowed or used in the business of H. Robert Paul & Company, which was the only legitimate business in which said Catton was engaged during all such times; that said Reehling was in a position to know of all these facts and circumstances."

The defendant Reehling only has appealed, and argues two points, to the effect (1) that the superior court of King county had no jurisdiction over the real estate in Pierce county, and (2) that the finding above quoted does not support the conclusion that the judgment obtained by Reehling is not a community obligation.

It is quite plain, we think, that the superior court of King county had jurisdiction over the property in Pierce county, because this is an action for divorce. The plaintiff was a resident of King county. The statute provides, at § 984, Rem. & Bal. Code, that a plaintiff in such cases may file her complaint in the county where she resides. Section 989 provides that the court granting a divorce shall make such disposition of the property of the parties as shall appear just and equitable. This court has held that the court in a divorce action has power to award any part of the property of the parties as shall appear just, but to do so it is necessary that the property shall be brought before the court, and the proper way to do this is to describe the property in the pleadings. *Philbrick v. Andrews,* 8 Wash. 7, 35 Pac. 358; *In re Smith's Petition,* 9 Wash. 85, 37 Pac. 311, 494; *Budlong v. Budlong,* 43 Wash. 423, 86 Pac. 648. The disposition of the property of the parties is an incident to the divorce. Where the property is brought into the action by description, the court thereafter acquires jurisdiction over it. Otherwise it would be necessary to bring an action in each county where the parties may have property. This was not the intention of the statute. Section 204, Rem. & Bal. Code, which provides that actions for possession of, or affecting the title to, real estate shall be commenced in the county where the subject of the action is situated, clearly does not apply to divorce actions, because the residence of the plaintiff determines where such action shall be brought. The superior court of King county, therefore, had jurisdiction over the property of the parties in Pierce county.

Appellant next argues that the finding above quoted does not support the conclusion that the debt owing from defendant Catton is not a community obligation of plaintiff and her husband. The finding is specific that the money was borrowed and used by said Catton for his separate use, and not at all for the community of plaintiff and Catton. If the finding had stopped there, the contention now made would

have no foundation whatever. But the finding continues: "That most or all of said money was borrowed and used in speculation in options and futures on stocks and produce . . .; that said Reehling was in position to know all these facts." Appellant argues that, because the proceeds of these speculations, if successful, would have been community property of Catton and wife, therefore the community was liable upon the notes for money borrowed for such purpose. The question is stated by appellant in his brief as follows:

"Where the husband borrows money and gives his negotiable promissory note therefor, using the proceeds thereof in dealing in futures—that is, buying and selling stocks on margins—does such an obligation create a separate debt of the husband, or does it create a community debt?"

It is apparently conceded—as the fact appears—that the defendant Catton borrowed this money from Reehling for the purpose of gambling in futures, and Reehling knew the facts. Catton lost the money. "By the weight of authority money loaned for the express purpose of gambling in a manner prohibited by law cannot be recovered back." 20 Cyc. 939. The debt, therefore, could not be collected from either the separate or community property of the plaintiff or her husband.

Appellant relies upon the case of *McGregor v. Johnson*, 58 Wash. 78, 107 Pac. 1049, 27 L. R. A. (N. S.) 1022. That was a case where Johnson had obtained by fraud a sum of money from McGregor. We there held that, since the community consisting of Johnson and wife had received the benefit of money wrongfully obtained, the community was estopped from denying liability in a suit to recover the money. The rule in that case does not control this, because the community here received no benefit, and the obligation being a gambling obligation was not enforceable against either the plaintiff or her husband.

The judgment is therefore affirmed.

ELLIS, MORRIS, and FULLERTON, JJ., concur.