[Civ. No. 10563.   First Appellate District, Division Two.—November 12, 1937.]

ITALO PETROLEUM CORPORATION OF AMERICA (a Corporation), Respondent, v. FRED SHINGLE et al., Appellants.

Wallace Sheehan, Faulkner & O'Connor and Gregory, Hunt & Melvin for Appellants.

A. J. Scampini, Hugh K. McKevitt, Jack Howard and Hettman & Scampini for Respondent.

SPENCE, Acting P. J.—Plaintiff sought by this action to obtain the cancellation of two promissory notes executed by plaintiff in favor of defendant Fred Shingle, syndicate manager, and to enjoin the prosecution of any action for the purpose of collecting upon said notes. From a judgment granting to plaintiff said relief, defendants have appealed. For the purpose of this discussion, defendant Fred Shingle, syndicate manager, may be treated as the sole defendant and appellant.

The transcript and the briefs are rather voluminous but the essential facts, as shown by the pleadings and the uncontradicted evidence, may be briefly stated. This action was brought in August, 1934, to cancel a note in the sum of $9,476.13 dated January 20, 1929, and a second note in the sum of $35,222.25 dated April 20, 1929. Said notes had been executed by plaintiff in favor of defendant Fred Shingle, syndicate manager, following certain conferences in which said defendant, as the manager of a syndicate of 78 persons,

had asserted a claim on behalf of said syndicate for dividends on certain preferred stock of the plaintiff corporation and in which said plaintiff had asserted claims in the sum of approximately $42,000 as an offset to said dividend claims. Those claims had arisen under the circumstances hereinafter set forth.

Plaintiff was incorporated in Delaware in 1928 and shortly thereafter it launched upon a plan for the acquisition of a number of oil properties. Agreements were entered into with various oil companies and plaintiff sought to obtain a permit for the issuance of 4,500,000 shares of its preferred stock and 7,500,000 shares of its common stock to Maurice C. Myers, as trustee, to be disposed of by him in the acquisition of the properties described in the application subject to liens, encumbrances and indebtedness of not to exceed $2,750,000. The agreements with the various oil companies provided for a consideration of approximately $3,500,000 in cash in addition to shares of stock of the plaintiff corporation and the raising of the necessary cash was undertaken by the syndicate under an agreement with plaintiff whereby the syndicate was to receive 3,000,000 shares of common and 3,000,000 shares of preferred stock of the plaintiff corporation from the trustee. The trustee was authorized to deliver the necessary shares of stock to consummate the agreements with the various oil companies and to deposit with Shingle, Brown & Co., as escrow holder, 3,000,000 shares of common and 3,000,000 shares of preferred stock "with instructions and authority to deliver the same to said Syndicate Manager ratably in the proportion that the sums advanced by the Syndicate in payment on said properties bear to the total syndicate obligation of $3,500,000". A third supplemental permit was issued by the commissioner of corporations in August, 1928, authorizing the issuance of 4,500,000 shares of preferred and 7,500,000 shares of common stock to the trustee "for the uses and purposes recited in the application and the papers filed therewith, and in exchange for the transfer and assignment to applicant of the properties described in the application and the papers filed therewith, and in the manner recited therein, subject to liens, encumbrances and indebtedness of not to exceed $2,750,000.00".

The syndicate obtained approximately $1,900,000 from its members and this sum, together with further sums derived

from the sale of the escrowed stock, was used to make up the sum of approximately $3,500,000 which was required. That amount had been paid out by the syndicate manager for the benefit of plaintiff during the months of June, July, August, September, October and December of 1928. In December, 1928, the purchase of the properties had been completed and on December 20, 1928, letters were written by plaintiff to the escrow holder and the syndicate manager acknowledging that the syndicate manager had "paid in full all obligations" to plaintiff and authorizing the escrow holder to deliver to the syndicate manager the balance of the escrowed stock. This was done, but the stock was not transferred of record from the name of the trustee to the name of the syndicate manager until March 28, 1929.

In the meantime two quarterly dividends had been declared on the preferred stock of the plaintiff corporation. On September 24, 1928, a dividend was declared on the preferred stock payable to stockholders of record as of September 30, 1928, and on December 7, 1928, a dividend was declared on the preferred stock payable to stockholders of record as of December 31, 1928. On April 2, 1929, a third dividend was declared on the preferred stock payable to stockholders of record as of March 31, 1929. The first of said dividends was paid on all preferred stock, including that which had been disposed of by the trustee prior to September 30th, but excepting the stock which actually stood in the name of the trustee on that date. The second dividend was paid on all preferred stock, including that which had been disposed of by the trustee prior to December 31, 1928, but with the following exception: A check for approximately $46,000 was originally drawn in favor of the trustee, but this check was subsequently canceled. Two checks representing that total were later made out to the trustee, one for approximately $4,000 which was endorsed by plaintiff and deposited in its own account and the other for approximately $42,000 which was not signed and which was later canceled.

As large sums of money had been advanced by the syndicate prior to the declaration of these first two dividends and as the agreements called for the delivery of the stock to the syndicate manager ratably in proportion to the sums advanced, the question of the payment of dividends to the syndicate was discussed as early as September, 1928. These

discussions continued until the conferences held in May, 1929. In the meantime, the third dividend had been declared on April 2, 1929. This dividend was payable to stockholders of record as of March 31, 1929, at which time the stock in question had been transferred of record to the name of the syndicate manager. A check for the sum of $35,222.25 was therefore issued and delivered to the syndicate manager on April 20, 1929, in payment of said dividend. This check was not cashed as plaintiff requested the syndicate manager to hold it because of a certain contemplated adjustment of accounts with the syndicate manager and because plaintiff was short of money at the time.

Conferences were then held to adjust the claims of the syndicate with respect to dividends and the claims of the plaintiff with respect to certain contingent liabilities incurred in the acquisition of the properties which plaintiff claimed brought the liabilities up to a figure which exceeded $2,750,000 by the sum of $42,367.37. With the assistance of their respective accountants, it was figured and agreed that the amount due as dividends on the syndicate stock on the first two dividends above mentioned was $51,843.50. It was further agreed that plaintiff should be allowed a set-off of $42,367.37 and that a note should be issued in favor of the syndicate manager for the difference amounting to $9,476.13. Said note was issued and was dated January 20, 1929. It was further agreed in said conferences that the syndicate manager would return the check given in payment of the third dividend and that a note in the same amount, to wit, $35,222.25, dated April 20, 1929, would be accepted in lieu thereof. This was done at the request of plaintiff. Both notes were actually executed in July, 1929, execution being delayed because the officers of plaintiff thought plaintiff might shortly be in a position to pay said obligations without the necessity of issuing notes therefor.

The complaint herein was in three counts. The first count involved the note for $9,467.13 and alleged that said note was issued without consideration. The second count involved the note for $35,222.25 and alleged that said note was issued without consideration. The third count involved both of said notes and plaintiff states in its brief that this count was "based upon fraud and mistake". The trial court found that said notes were issued without consideration, but found against plaintiff on the issues of fraud and mistake.

■ Appellant raises several points on this appeal but the main contention is that the findings to the effect that said notes were issued without consideration are not supported by the evidence. In our opinion this contention must be sustained.

In addition to the *prima facie* showing of consideration made by the production of the notes (Civ. Code, sec. 3105), all of the evidence showed that said notes were issued for a sufficient consideration. The note set forth in the first count was given in settlement of the balance which the parties agreed was due upon the claims asserted by appellant and respondent. Appellant's claims were based upon his alleged right as syndicate manager to the first two dividends which were declared during the time that the preferred stock stood of record in the name of the trustee. Under the agreement of the parties, the syndicate manager was entitled to said stock "ratably in the proportion that the sums advanced by the syndicate in payments on said properties bear to the total syndicate obligation of $3,500,000". Large sums were advanced by the syndicate before the first dividend date and further sums were advanced before the second dividend date but the stock was not actually transferred of record from the name of the trustee to the name of the syndicate manager until shortly before the third dividend date. Even if it be assumed that the claim of the syndicate manager to the first two dividends was of doubtful validity, the settlement and compromise of said claim by the syndicate manager was sufficient consideration for the execution of said note. (*San Francisco Mercantile Union* v. *Miller,* 18 Cal. App. 174 [122 Pac. 828]; *Randisi* v. *Simone,* 26 Cal. App. 661 [147 Pac. 1176]; 19 Cal. Jur. 842, sec. 38.) ■ As to the sufficiency of the consideration for the note set forth in the second count, there appears to be no doubt whatever. A check in the same amount as the note had been previously given to appellant by respondent as a stockholder of record entitled to the third dividend. At the request of respondent, this check was surrendered before payment in exchange for said note and this constituted a sufficient consideration. (*Drovers' Nat. Bank* v. *Browne,* 88 Cal. App. 716 [264 Pac. 265]; *First Nat. Bank* v. *Williams,* 54 Cal. App. 537 [202 Pac. 164]; *Simpson* v. *Smith,* 43 Cal. App. 94 [184 Pac. 507]; *Shoenhair* v. *Jones,* 33 Cal. App. 545 [165 Pac. 971].)

In its brief, respondent speaks of "a general illegality of consideration"; of a "general conspiracy to loot and defraud" respondent, and of "constructive fraud". It further claims that entire issue of stock to the syndicate was illegal and void because contrary to the permit issued by the commissioner of corporations. Assuming, without deciding, that these theories were put in issue by the pleadings, there is neither evidence nor findings to sustain them. Upon the record before us, the judgment of the trial court may stand only in event that there is evidence in the record to support the findings that said notes were issued without consideration. As above indicated, we are of the opinion that there is no evidence to support said findings.

In view of the conclusions which we have reached, we deem it unnecessary to discuss the remaining points raised by appellant.

The judgment is reversed.

Sturtevant, J., and Goodell, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 11, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 10, 1938.