[L. A. No. 19934. In Bank. May 2, 1947.]

A. K. HAMILTON, Respondent, v. IRENE ABADJIAN
et al., Defendants; O. ABADJIAN, Appellant.

Marcus L. Roberts and Joseph R. Vaughan for Appellant.

Tripp, Callaway, Sampson & Dryden for Respondent.

GIBSON, C. J.—On defendant's return to Los Angeles he stopped payment on six checks aggregating $11,450, part of the proceeds of which were used in financing gambling operations at Las Vegas, Nevada, during the preceding week end. This action was then brought to enforce payment on the checks, and defendant appeals from a judgment entered pursuant to a verdict for plaintiff in the sum of $5,000. Plaintiff does not claim as a holder in due course, but as assignee for collection of the payee, the hotel in whose casino the gambling occurred.

During the week end of May 12-14, 1944, while defendant was a guest at the hotel, he gave five checks in the amount of $2,000 each and a sixth check for $1,450, all of which were drawn on a Los Angeles bank. It was stipulated that the checks were signed by defendant and given to the hotel, that they had not been paid, and that payment had been stopped.

Plaintiff's evidence, with respect to the circumstances under which the checks were honored, is as follows:

The first check was signed and delivered at a gaming table in the casino as defendant started to play the game of blackjack on the first evening of his stay at the hotel. Defendant

was given cash for this check and lost all of the proceeds at the blackjack table.

The second, third and fourth checks were honored during the week end and appeared in the receipts of the hotel, but plaintiff's witnesses could not identify the transactions involving those checks. They testified, however, that no restrictions were ever placed on the use of money received when checks were honored, either in the casino or in the hotel, and that it was the rule to give money and not chips for checks.

The fifth check was written and accepted in the casino and defendant received cash for it while at the blackjack table.

The sixth check was given at the close of the week end after defendant stopped gambling, and for it defendant received $1,000 in cash, the balance of $450 being in payment of prior losses at blackjack.

There was also testimony that defendant stated to the assistant manager of the casino that he had lost $2,500 during the week end at another gambling establishment.

Defendant testified that the first five checks were written in the casino, that he received chips for them in the course of play, and that all of the proceeds of these checks were lost playing blackjack. With respect to the sixth check, he testified that it was presented after he had stopped gambling, and that it was given, together with $550 in chips which he held, in exchange for another check, not in evidence, which he had previously written for $2,000.

The jury returned a verdict for plaintiff in the sum of $5,000 and the principal question is whether there is sufficient evidence to support the verdict for that amount.

Inasmuch as the checks were made and honored in Nevada but drawn on a California bank a problem would ordinarily arise as to which law should be applied. It is unnecessary, however, to decide that question here since the same result would be reached whether the transaction is held to be governed by the law of California or Nevada. Although gambling is licensed in Nevada, the courts of that state follow the general rule, which prevails in California, and refuse to lend their process to recover losses in gambling transactions of the type here involved. (See *Scott* v. *Courtney,* 7 Nev. 419; *Evans* v. *Cook,* 11 Nev. 69; *Burke & Co.* v. *Buck,* 31 Nev. 74 [99 P. 1078, 21 Ann.Cas. 625, 22 L.R.A.N.S. 627]; *Menardi* v. *Wacker,* 32 Nev. 169 [105 P. 287, Ann.Cas. 1912C 710]; 10 Nevada State Bar Journal, 209; *Johnston* v. *De Lay,* ——

Nev. —— [158 P.2d 547]; *Bryant* v. *Mead,* 1 Cal. 441, 444; *Carrier* v. *Brannan,* 3 Cal. 328, 329; *Union Collection Co.* v. *Buckman,* 150 Cal. 159, 161 [88 P. 708, 119 Am.St.Rep. 164, 11 Ann.Cas. 609, 9 L.R.A.N.S. 568]; *Wallace* v. *Opinham,* 73 Cal.App.2d 25, 28 [165 P.2d 709]; see, also, Restatement of Contracts, §§ 525, 602; *Appleton* v. *Maxwell,* 10 N.M. 748 [65 P. 158, 55 L.R.A. 93]; *Brinley* v. *Williams,* 189 Okla. 183 [114 P.2d 463]; *Catton* v. *Catton,* 69 Wash. 130 [124 P. 387]; *Ash* v. *Clark,* 32 Wash. 390 [73 P. 351]; *Whorley* v. *Patton-Kjose Co.,* 90 Mont. 461 [5 P.2d 210]; L.R.A. 1918C 247, 251.)

The evidence is undisputed that the first check was honored at the blackjack table and that all of its proceeds were lost there. It is likewise undisputed that the fifth check was honored at the blackjack table and that play commenced soon thereafter. ■ The owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check. (See *Burke & Co.* v. *Buck,* 31 Nev. 74, 80 [99 P. 1078, 21 Ann.Cas. 625, 22 L.R.A.N.S. 627]; *Poorman* v. *Mills & Co.,* 39 Cal. 345, 353 [2 Am.Rep. 451]; *Appleton* v. *Maxwell,* 10 N.M. 748, 750 [65 P. 158, 55 A.L.R. 93]; L.R.A. 1918C 247, 251.) Plaintiff, therefore, was not entitled to recover on the first and fifth checks.

It is conceded that the evidence is sufficient to support a recovery of $1,000 as to the sixth check and it is likewise admitted that no recovery can be had as to the balance of $450.

■ As to the second, third and fourth checks, plaintiffs presented a prima facie case for recovery by showing that they were made by defendant in due form and remained unpaid after payment was stopped. (*Thom* v. *Stewart,* 162 Cal. 413, 419 [122 P. 1069]; see *Italo Pet. Corp.* v. *Shingle,* 23 Cal.App.2d 422, 427 [73 P.2d 611].) Plaintiff's assignor was operating a hotel as well as a casino, and there was evidence that it was the custom to give cash for checks and that no restrictions were placed by the payee upon the use of the money. ■ Moreover, plaintiff was entitled to rely upon the presumptions that there was sufficient consideration for the checks, that the entire transaction was legal, and that it was not contrary to public policy. (Civ. Code, §§ 1614, 1667, 3105; Code Civ. Proc., § 1963, subds. 1, 19, 20, 21; see *Barrios & Co.* v. *G. V. Pettigrew Co.,* 68 Cal.App. 139, 143 [228

P. 676] ; *Thom* v. *Stewart, supra;* 20 Am.Jur. pp. 221, 236; cf. *Burne* v. *Lee,* 156 Cal. 221, 229 [104 P. 438].)

▮ Where a transaction is fair and regular on its face, the burden of proof of unlawful purpose is upon the person asserting the illegality. (*Grimes* v. *Nicholson,* 71 Cal.App.2d 538, 542 [162 P.2d 934]; *Barrios & Co.* v. *G. V. Pettigrew,* 68 Cal.App. 139, 143 [228 P. 676]; *Live Oak Lumber Co.* v. *Farr,* 28 Cal.App. 641, 643 [153 P. 741]; 12 Am.Jur. p. 744.)

▮ The only evidence of illegality as to the second, third and fourth checks is defendant's testimony regarding the circumstances under which these checks were cashed and the proceeds used. The jury, however, was not bound to accept defendant's version of these transactions. He was an interested party and his testimony was contradicted in several particulars. Plaintiff produced evidence that defendant received cash and not chips for checks, that he lost $2,500 in another establishment, and that he did not give the sixth check in lieu of a prior illegal check as claimed. In passing on the credibility of a witness, the jury is entitled to consider his interest in the result of the case, his motive, the manner in which he testifies, and contradictions appearing in the evidence. (*Blank* v. *Coffin,* 20 Cal.2d 457, 461-462 [126 P.2d 868]; Code Civ. Proc., § 1847.) The jury therefore could, and evidently did, disbelieve the testimony of defendant with respect to the circumstances under which at least two of these three checks were honored. ▮ It is immaterial that the evidence might have supported a larger verdict, since defendant was not prejudiced, and plaintiff has taken no appeal.

▮ Defendant also complains of the admission of evidence which he contends was irrelevant. He alleged in his answer that he was cheated and defrauded by employees of the casino through "their manipulation of cards" in the blackjack game. In refutation of this claim, the assistant manager of the casino testified to the following conversation with defendant, just before the latter's departure from the hotel: "Well, he told me that he could not pay. He said he had had a very bad week in the stock market, he had lost a lot of money, that he just could not pay it. I said 'Well, how about the $10,000 you won the time before. We paid you.' He said 'Well, I just cannot pay.' I asked him what he intended to do about it. He said, well he would probably pay it in time but right then he wasn't able to pay it." No objection was made to

the introduction of this evidence but, to the contrary, counsel for the defendant stated that he would make no objection. Later, however, he moved to strike the "reference to any alleged winning of $10,000." The motion was denied. The statements made by defendant giving the reasons for his refusal to pay the checks were admissible and, although evidence of prior winnings may not have been material to the issues in this case, it was not prejudicial error under the circumstances to refuse to strike that portion of the conversation.

■ It is also contended that it was error to introduce in evidence a photograph taken of defendant on a prior visit to the casino showing him sitting at a table with chips in front of him. Defendant had testified that he had gambled at the casino on prior occasions, and it was not prejudicial error to admit the photograph in evidence.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.