**GULF COLLATERAL, INC., Appellant,**

v.

**Rex C. CAUBLE, Appellee.**

No. 17162.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 15, 1971.

Franklin R. Navarro, Houston, Gerald E. Stockard, Denton, for appellant.

Jack W. Gray and John L. Sullivan, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

Gulf Collateral, Inc., assignee of an indebtedness evidenced in writing (not a negotiable instrument), sued the appellee Rex C. Cauble to collect $50,000.00. The trial court granted the summary judgment for which defendant/appellee prayed and Gulf Collateral, Inc. appealed.

■ Premise upon which appellee's Motion For Summary Judgment was predicated was his affirmative defense of illegality in that the indebtedness sued on was created for gambling purposes. The burden to be discharged, incumbent upon appellee, was to show that the debt had been created for such purposes. If such was shown, and further that there was no genuine issue thereupon to be resolved as a matter of fact, his judgment is to be affirmed. Texas Rules of Civil Procedure 166–A, "Summary Judgment".

We affirm.

We have been directed to the case of Springer v. Sahara Casinos Company, 322 S.W.2d 33 (Eastland Tex.Civ.App., 1959, writ dism.) in which applicable law is concisely stated, as follows:

"Springer's first point is that the court erred in granting Sahara's motion because the check was given for gambling purposes and public policy prohibits its collection through the Courts of Texas.

"The applicable rule is stated in 53 A.L. R.2d 372, as follows:

"'Patrons of gambling establishments occasionally borrow money from the proprietor or secure cash or chips from him by giving a check or other instrument, so as to take part in the game. It has been recognized that under such circumstances the proprietor (who is regarded as a participant in the game) cannot recover from the borrower on the loan or because the check or other instrument has been dishonored.'

Under this statement there is a discussion of cases pertinent to the question presented. In Braverman v. Horn, [88] Cal.App. [2d 379], 198 P.2d 948, 949, it was held that a gambling house that cashed a patron's check 'for the purpose of enabling the drawer to use the proceeds in a gambling game conducted' in Nevada could not collect the check through the California courts. The annotation following this case in 53 A.L.R.2d 373 contains this statement:

" 'The owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check. Hamilton v. Abadjian, 1947, 30 Cal.2d 49, 179 P.2d 804, involving checks drawn on a California bank by the defendant and honored by the plaintiff's assignor, which checks had been drawn to procure money to engage in playing blackjack and to pay gambling debts incurred in Nevada, the courts of which state, which licenses gambling, follow the general rule, which prevails in California, and refuse to lend their process to recover losses in gambling transactions of the type here involved.'

But in said annotation at page 374 it is pointed out that in the Hamilton case it was said that when no condition was imposed that the proceeds be used for gambling the checks were not necessarily unenforceable. In Jones v. Akin & Akin, Tex. Civ.App., 80 S.W. 385, it was held that checks given by Akin for money furnished by plaintiff for the purpose of betting on plaintiff's game, in which plaintiff participated, could not be collected through the courts when said facts were established as a defense. In Lloyd v. Robinson, Tex. Civ.App., 160 S.W. 128, it was held that checks given for money to be used in gambling could not be collected and the drawer could stop payment on the checks. In Reed v. Brewer, 90 Tex. 144, 37 S.W. 418, it was held that one who sells property to be used for an illegal purpose cannot

enforce payment of notes given therefor. 'A drawee cannot recover on checks given by a drawer as advancements to play on the drawee's gambling device.' 20 Tex.Jur. 682. A lender cannot recover money loaned for use in a gambling game, where the lender participated and aided in the gambling. 20 Tex.Jur. 685. In Oliphant v. Markham, 79 Tex. 543, 15 S.W. 569, 571, the jury was instructed 'that, if they found that Jones bought futures for Markham, and advanced money for that purpose * * * this rendered the transaction illegal, and plaintiff could not recover.' Our Supreme Court said that the quoted instruction was correct. In Garza v. Richmond, Tex.Civ. App., 249 S.W. 889, it was held that checks cashed by the plaintiff for the purpose of gambling at a table run by plaintiff could not be collected through the Courts of Texas. In 24 Am.Jur. 452, it is said that illegality of consideration is a good defense between the parties in all actions founded on obligations given in consideration of a gambling debt. See also 24 Am.Jur. 470, 471. In Seeligson v. Lewis & Williams, 65 Tex. 215, Lewis & Williams sued Seeligson on notes executed by him. Seeligson's defense was that there was no consideration because the notes were given for broker's fees and losses incurred in the purchase of futures, which were gambling transactions in which all parties engaged. It was held that this was a good defense because it was contrary to public policy for the courts to enforce payments of notes based on such a consideration. In Mullin v. Nash-El Paso Motor Company, Tex.Civ.App., 250 S.W. 472, 475 (Writ Ref.), the defense attempted to be asserted by Springer was in effect, sustained. The following decisions are to the same effect: Anderson v. O'Briant, Tex.Civ.App., 3 S.W.2d 842, 845 (Writ Ref.); Kahn v. Harris, Upham & Co., Tex. Civ.App., 247 S.W.2d 139, 142; Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146, 151; Garrison v. Garrison, Tex.Civ.App., 66 S.W. 2d 451, 452. In 38 C.J.S. Gaming § 26, p. 97, it is said that money loaned and used for the purpose of gambling cannot be recovered.

"Since Sahara was engaged in activities other than gambling and contends that it did not cash Springer's check for the purpose of enabling him to gamble on its devices, the check should be enforced if this be true. Sahara can make out a case by proof that it cashed the check and that it has not been paid and it is then entitled to judgment unless Springer establishes a defense. However, if, upon a trial, Springer establishes by a preponderance of the evidence, as he in effect contends, that Sahara cashed his check for the purpose of having the proceeds used to gamble in its Casino and that the money was so used, the check cannot be collected through the courts of Texas. 53 A.L.R.2d 372; 23 Am.Jur. 464, 471; 10 Tex.Jur. 250; 20 Tex.Jur. 685; 6 Tex.Jur. 859, 861; L.R.A.1918C, 247; 38 C.J.S. Gaming § 26, p. 97; 83 A.L.R. 589. Also see Seeligson, Oliphant and Reed cases, supra."

■ In the case now before this Court appellant has devoted a portion of its brief to the proposition that " * * * the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case", as written upon in Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526 (1888), and Hall v. Edwards, 222 S.W. 167 (Tex.Com.App., 1920). The principle of law stated is applied to a readily understood situation involving gambling in Murry v. Campbell, 338 S.W.2d 483 (Amarillo Tex.Civ.App., 1960, no writ hist.). Essentially it is this: if the tainted transaction has been completed, and another grows out of it collateral to it, *dependent upon a new consideration,* the new contract is not vitiated by the taint of the old one, and will be enforced. (Emphasis supplied.) We perceive absolutely no possibility of applying the proposition so urged to the facts of the instant case. The facts with which we are concerned show that the indebtedness sued on is not collateral as an outgrowth from any former transaction nor is it dependent upon any new consideration.

Appellee's affidavit in support of his Motion for Summary Judgment read in part, as follows:

"* * * over a period of several hours prior to the time that the instrument was signed, I was a patron of gambling tables operated by the Stardust Hotel in Las Vegas, Nevada. I was an overall consistent loser at the Stardust Hotel gambling tables at such time, and at various times while I was gambling at such tables, and for the purpose of enabling me to continue gambling at the Stardust Hotel gambling tables, I was furnished regularly $100.00 Stardust Hotel gambling chips or tokens in aggregate amounts from $10,000.00 to $25,-000.00 worth of such chips or tokens by the Stardust Hotel gambling casino manager. These Stardust Hotel Gambling chips or tokens were used by me to make bets on such gambling tables, and eventually I finally lost the sum of $100,000.00 worth of said gambling chips advanced to me by the gambling casino manager, all of which chips were lost at the Stardust Hotel gambling tables. These gambling chips were delivered directly to me by the casino manager while I was gambling, and I did not go to the cashier's window or any hotel office of the Stardust Hotel to receive said $100,000.00 worth of gambling chips or tokens.

"No part of this $100,000.00 was received by me in the form of cash, or money, and all of it was received exclusively in Stardust Hotel gambling chips or tokens, and all of which gambling chips were lost at Stardust Hotel gambling tables. Shortly after I lost the last of these chips at the gambling tables, I signed and delivered to the Stardust Hotel gambling casino the original of the instrument referred to hereinabove, which instrument at that time, however, did not show any payments thereon. * * * My intention in signing the instrument was to sign a so-called 'IOU' for the gambling debt to the Stardust Hotel, representing solely and exclusively, advancements to me by the Stardust Hotel of Stardust Hotel gambling chips for the pur-

pose of gambling at their gambling tables, and which chips I lost at their gambling tables. * * *"

■ Oftentimes the affidavit of a movant is one as to which his credibility as an interested party would be in issue and therefore foreclosing summary judgment. However, we are of the opinion that in the instant case a recognized "exception" to the rule has application under the principle of law born in Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S. W.2d 904 (1942) and developed in subsequent cases. See McDonald, Texas Civil Practice, Ch. XI, "Jury Trial: General", Sec. 11.28, "Motion for Instructed Verdict. —D. Situation in Which Verdict Directed", and in particular cases annotated under Note 36 (on p. 1040 of original Vol. 3). In other words where the testimony is from an interested party pertaining to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally devoid of inconsistencies and contradictions, and is uncontradicted by testimony of other witnesses or by circumstances —in short, when there is nothing to cause any reasonable suspicion as to its truth, it may be taken and accepted as establishing the fact in question with accompanying disregard of the question of his credibility. The most effective constructive corroboration of such testimony is afforded by the fact that the opponent offers no contrary evidence when the testimony relates to matters not solely within the knowledge of the witness and subject to ready contradiction if the testimony be false.

■ In the instant case the appellant was obviously able to offer evidence in contradiction to the testimony in the affidavit of the appellee, but it has neither done so nor sought delay in order to make the attempt. Neither has it advanced any excuse or explanation for its failure in such respect.

■ Appellee does advance the contention that in Las Vegas, where the appellee had done the gambling and had lost the money in the form of "chips" furnished by the gaming establishment where his gambling occurred, appellee was not compelled to use the "chips" for that purpose alone, but could have purchased items of merchandise. It is indicated that such "chips" were there treated as having the same value as money as a medium of exchange. Nothing in the contention will be given force and effect sufficient to inhibit the propriety of the summary judgment. We are convinced that even in the event of the remote possibility that within the period of a few hours under consideration some article or articles might have been purchased by the "chips" furnished to appellee the money value, if any, of the article or articles would have been trifling in comparison to the $100,000.00 in "chips", or value thereof, lost at the gaming tables. Although the maxim *"De minimis non curat lex"* ("the law does not concern itself with trifles") would not have strict application the principle of law supporting the maxim entitles us to disregard the possibility of appellee's use of any substantial amount of "chips" for purposes other than gambling, even though it is a summary judgment from which the appeal has been taken. In other words, even if the appellee made such use of "chips" it would be of no consequence or in any event insufficient to require reversal. See 44 A.L.R. 168, Annotation: "De minimis non curat lex." The trial court's disregard of such possibility of other use by appellee of the "chips" advanced to him would in any event be harmless error merely. T.R.C.P. 434.

Judgment is affirmed.