## Hilton of San Juan, Inc. *v.* Frank J. Lateano et al.

Circuit Court

Twelfth Circuit
File No. CV 12-7011-07647

Memorandum filed September 27, 1972

*Sharaf & Klau,* of Hartford, for the plaintiff.

*John P. McKeon,* of Hartford, for the defendants.

BIELUCH, J. The plaintiff operates a hotel and gambling casino in Puerto Rico and brought this action against the defendants, husband and wife, residents of Connecticut, to recover $3000 loaned to them in four instalments between February 26 and March 1, 1969, while they were guests at its hotel. In its more specific statement the plaintiff claimed that the loans were made at the request of the defendant Frank J. Lateano and were paid to him in the form of chips. Thereafter the plaintiff by amendment alleged that it cashed "defendant's [sic]" checks in that amount. The defendants pleaded specially that any debt due the plaintiff arose out of gambling transactions, and they have moved for summary judgment because of the uncollectibility of gambling debts in Connecticut. The plaintiff has countered with its own motion for summary judgment on the law.

The defendant Frank J. Lateano, hereinafter called the defendant, asserts in his supporting affidavit the following uncontradicted facts: Reservations were made through a local agent for him and his wife to stay at the plaintiff's hotel, with a prior understanding that the air fare would be fully reimbursed in the form of gambling chips; the plaintiff conformed to this arrangement and repaid the cost of the flight to the defendants in gambling chips on their arrival at the hotel; during the defendant's stay between February 26 and March 1, 1969, he applied for credit on four occasions and received for his promissory notes, with no other option offered, gambling chips usable and redeemable only at the plaintiff's hotel, and as a result of gambling at the plaintiff's dice tables he lost $3000 in gambling chips. The affidavit of the plaintiff's manager states: The hotel accepted the defendant's promissory notes for which it gave him $3000 in chips; it does not have any rules requiring that the chips obtained in exchange for promissory notes be used for gambling purposes; if the defendant used the chips for gambling, it was at his own choice, and the chips could also have been used in the hotel for payment of charges for room, food and entertainment, could have been sold to another person, or could have been cashed at the casino.

Summary judgment should be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 303; *Anderson* v. *Watson*, 162 Conn. 245, 248; *First Federal Savings & Loan Assn.* v. *Deane,* 29 Conn. Sup. 505, 506.

The defendant relies on *Ciampittiello* v. *Campitello,* 134 Conn. 51, in which our court held that we

will not enforce the laws of another jurisdiction or rights arising thereunder which contravene our public policy, and, therefore, it refused to uphold an agreement to share the proceeds of parimutuel horse bets legally made in Rhode Island as violative of such public policy and what is now § 52-553 of the General Statutes, outlawing gambling contracts. The plaintiff seeks to escape the clutches of § 52-553 by dissecting the defendant's loans from his subsequent gambling losses, conceding that notes to cover prior losses would be unrecoverable, and claims that since the chips were "legal tender" within the confines of the hotel and the defendant was not compelled to use his chips for gambling, the promissory notes by which they were obtained did not constitute gambling debts. In support of its position the plaintiff cites *Hamilton* v. *Abadjian,* 30 Cal. 2d 49. In that case the plaintiff's assignor operated a hotel and gambling casino in Nevada and gave cash for the defendant's checks with no restriction on the use of the money. Recovery was denied by the California court for the checks cashed at the gambling table, the court saying, "[t]he owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check," and allowed for the other checks since the defendant failed to sustain his burden of proof before the jury that those checks were cashed for gambling purposes, the plaintiff having "produced evidence that defendant received cash and not chips for checks, [and] that he lost $2,500 in another establishment." Id., 52–53.

It is a general principle of our law that a plaintiff may enforce in the courts of this state any legal right of action which he may have under the law of another jurisdiction except when that law or the

rights arising thereunder contravene our public policy. *Ciampittiello* v. *Campitello,* supra, 54. The court is authorized to take judicial notice of the law of Puerto Rico under General Statutes § 52-163. Puerto Rico allows the recovery of debts arising out of gambling games or bets which are not prohibited by law, unless the debts are excessive in amount. P.R. Laws Ann. tit. 31 § 4774 (1968).

The California court's decision in *Lane & Pyron, Inc.* v. *Gibbs,* 71 Cal. Rptr. 817, restricted the applicability of *Hamilton* v. *Abadjian,* supra, here. In that case the casino furnished free air transportation, weekend lodging, meals and drinks to the defendant. During a single night he cashed five checks at two neighboring casinos, which assigned them to the plaintiff for collection. The transactions took place at the cashiers' cages, located fifteen to twenty feet from the nearest game. The checks were exchanged for cash, and no restrictions were placed on the money's use. The defendant admitted that he was free to walk out with the money or to expend it on food, liquor or entertainment, but instead he lost it gambling. By statutory change since the *Hamilton* case, the presumptions of consideration and legality were no longer evidence available to the plaintiff. Aside from the lack of restriction on the customer's use of the money and the availability of nongambling uses for the money, the plaintiff produced no evidence whatever of a nongambling purpose or nongambling use. On the other hand, the uncontradicted evidence supported the gambling purpose of the expense-paid excursion to Nevada; the gambling purpose of the cashiers' booths near the gambling areas; the gambling purpose of the customer in cashing the checks; the gambling purpose of the club in supplying the check cashing services; and the mutual participation of customer and club in gambling with the proceeds. The court found that the

absence of a commitment that the customer would use the money for gambling, the availability of non-gambling objectives on which to spend the money, and the customer's freedom to spend the money for such objectives provided no reasonable evidence of a nongambling purpose or nongambling use and offered "no more than barely combustible fuel for speculation." *Lane & Pyron, Inc.* v. *Gibbs,* supra. The court therefore, disallowed recovery.

The Texas court in *Gulf Collateral, Inc.* v. *Cauble,* 462 S.W.2d 619, granted summary judgment to the gambler-debtor on his affirmative defense of illegality in that the indebtedness sued on was created for gambling purposes. This was a suit by an assignee on a nonnegotiable instrument given for chips lost at gambling tables. The defendant conceded that he was not compelled to use the chips for gambling alone but could have purchased items of merchandise with them, the chips being there treated as having the same value as money as a medium of exchange. The court stated that where the movant's affidavit is from an interested party pertaining to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally devoid of inconsistencies and contradictions, and is uncontradicted by testimony of other witnesses or by circumstances, it may be taken and accepted as establishing the fact in question, corroborated there by the failure of the opponent to offer contrary evidence when the testimony related to matters not solely within the knowledge of the witness and was subject to ready contradiction if the testimony was false. Id., 623. The court did not consider it of moment that the defendant had a possibility of expending the chips for purchases, the money value of which, if any, would have been trifling in comparison to the $100,000 lost gambling.

Our case falls within the holding of *Dorado Beach Hotel Corporation* v. *Jernigan,* 202 So. 2d 830 (Fla. App). There the Florida court granted a summary judgment to the gambler-debtor, denying the right of the plaintiff hotel and gambling casino, located in Puerto Rico, to recover on a $6000 check given for gambling losses. The District Court of Appeal affirmed the summary judgment for the defendant entered by the trial judge on the ground that the debt was uncollectible under the Florida statutes, citing *Young* v. *Sands, Inc.,* 122 So. 2d 618 (Fla. App.) to the effect that a gambling obligation, although valid in the state where it was created, cannot be enforced in Florida because it is contrary to public policy.

The court finds the uncontroverted statements of the defendant's affidavit sufficient evidence to sustain his defense of illegality of the debt incurred for gambling purposes. The plaintiff's claim is against the long-established public policy of our state and is unenforceable in our courts.

Accordingly, the defendants' motion for summary judgment is granted.