[L. A. No. 17935.   In Bank.   Sept. 28, 1942.]

LULU G. HAIME, Appellant, v. LOUIS HUDON de BEAULIEU et al., Respondents.

Redmond & Redmond and James W. Pierce for Appellant.

Evans & Boyle for Respondents.

CARTER, J.—Plaintiff appeals from a judgment quieting title in defendants de Beaulieu, husband and wife, to residence property situated in San Marina, California.

In August, 1939, plaintiff owned the property in question. It was encumbered by a trust deed given to secure a note held by the Mortgage Guarantee Company as payee and beneficiary. Furniture owned by plaintiff was encumbered by a chattel mortgage held by the Carlton Finance Company. Plaintiff being unable to pay the note secured by the trust deed, a trustee's sale was had in that month at which the beneficiary was the purchaser. About September 28, 1939, defendants, friends of plaintiff, at her request, entered into an agreement with her by which they agreed to purchase the property from the Mortgage Guarantee Company for the benefit of plaintiff, and take title in their names, with the understanding that plaintiff could repurchase the property from them at any time on or before March 1, 1940, upon reimbursing defendants for all sums expended by them in the purchase of the property, together with interest at the rate of 6 per cent per annum, and a release of any obligation they had thereby incurred. It was also agreed that plaintiff was to make repairs to the property, and the property was to be rented, the proceeds being used for taxes and interest. It was stipulated at the trial that a written agreement, dated September 28, 1939, signed

by plaintiff but not by defendants embodied the terms of the agreement except in the particulars to be called to the attention of the court. Pursuant to the agreement defendants paid the mortgage company $1,000 on a purchase price of $6,115.98 for the property and executed a note and trust deed for the balance payable on April 1, 1940. The deed from the mortgage company to defendants was placed in escrow by the company but was later withdrawn and delivery thereof to defendants refused, inasmuch as plaintiff had advised the escrow holder that she claimed an interest in the property.

On December 5, 1939, at plaintiff's request, defendants paid the chattel mortgage on the furniture, which was moved into the residence on the property, on the understanding that it would be returned to plaintiff if she reimbursed defendants.

Plaintiff failed to reimburse defendants on March 1, 1940, and on March 12, 1940, she commenced the instant action praying that defendants be required to convey the property to her and for the rental value of the property from January 1, 1940. Defendants answered, and filed a cross-complaint to quiet title to the property.

Finding of fact and conclusions of law were expressly waived by the parties, and on August 7, 1940, a so-called interlocutory decree was rendered providing that if within thirty days thereafter plaintiff pay to defendants certain sums and obtain a release of their obligation to the mortgagee company, the defendants were to convey the property to plaintiff; upon plaintiff's failure to comply, title to the property was to be declared to be in defendants and quieted against plaintiff. Upon motion, that decree was modified on October 4, 1940, allowing plaintiff until October 12, 1940, to furnish the money. The amounts to be paid by plaintiff were less however. On November 4, 1940, the court made its final decree in which it was stated that inasmuch as plaintiff had failed to comply with the interlocutory decree, title to the property was quieted in defendants.

At the outset it should be observed that inasmuch as findings of fact and conclusions of law were waived, every intendment is in favor of the judgment and upon all issues before the trial court it must be presumed that the court found all the facts necessary to support the judgment. (*Gray* v. *Gray*, 185 Cal. 598 [197 Pac. 945]; 24 Cal. Jur. 956.) If there is any substantial evidence to support the judgment it must be affirmed. With these rules in mind we turn to the contentions of plaintiff.

In the modified interlocutory decree the court required the payment by plaintiff as a condition of having the property conveyed to her, of $1,662, with interest on the sum of $1,000 from October 2, 1939, on $500 from April 2, 1940, on $75.09 from April 17, 1940, and on $1,662 from August 7, 1940, all at the rate of 7% per annum. Those sums consisted of the amounts expended by defendants in connection with the transaction.

Plaintiff contends that the defendants should not have been allowed any interest on the amounts specified in the modified interlocutory decree, that the rate of interest was excessive, that defendants were liable for the repairs and improvements made on the property by her of the value of $600, and that she was entitled to the reasonable value of the use and occupation of the property by defendants. She reasons that defendants held title to the property in the dual capacity as resulting trustees and mortgagees in the first instance and later as constructive trustees by reason of their breach of the trust, and that because of breach of trust and bad faith on defendants' part no interest should have been allowed to them on the moneys advanced in connection with the purchase. Her contentions are largely based upon the premise that defendants were guilty of bad faith and breach of trust. With reference to that premise plaintiff makes several claims. Assuming her legal theories to be correct and keeping in mind that we must presume that the trial court found that there was no breach of trust or bad faith, we believe that finding is supported by the evidence.

To establish bad faith and breach of trust contrary to the findings, plaintiff refers to defendants' cross-complaint in which they asserted ownership of the property claiming that they were taking a position adverse to their trust obligation. But the cross-complaint was filed after March 1, 1940, the date upon or before which plaintiff was to repay all moneys advanced by defendants and obtain a release from the mortgage company of defendants' obligation to that company. At that time plaintiff was in default, not having paid those advances or obtained the release. Under those circumstances defendants would be justified in endeavoring to quiet title to the property in the action brought by plaintiff. It is clearly the law that where a person in a position such as defendants, has a mortgagee-trustee status as plaintiff claims, then that person may prosecute an action to quiet title to the property when the mortgagor-beneficiary fails to pay the sums advanced by him, and he need not bring an action to foreclose the security. (*Hughes*

v. *Korntved,* 218 Cal. 3 [21 P. (2d) 417].) Plaintiff did not discharge the obligation on March 1, 1940, the date it was due, and had not tendered the payment. Furthermore, it should be observed that at the trial defendants offered to convey the property to plaintiff upon her compliance with the agreement within thirty days and the first interlocutory decree was made in accordance with that offer.

Plaintiff argues that she was prevented from performing under the agreement because by its terms the real property was to be rented, and the rent applied on the interest, taxes and improvements, and that defendants took possession of the property, failed and refused to rent it, and tried to prevent plaintiff from obtaining a loan to reimburse defendants. While it may be true that the property was to be rented and the rents to be so applied there were no rentals as the property was not rented. It does not appear that defendants were obligated to find a tenant for the property. With reference to defendants' possession of the property it appears according to the testimony of Mrs. de Beaulieu that defendants took possession on January 16, 1940, when plaintiff gave her the key to the residence. Plaintiff testified that Mrs. de Beaulieu remained in possession of the property until the last week of January, 1940, when she went into possession and stayed until the third week in February. Plaintiff's counsel testified that plaintiff gave the key to the house to Mrs. de Beaulieu and "was supposed to turn possession over to her (Mrs. de Beaulieu) about the time when the $1,000.00 was paid to the mortgage company." That is to say defendants were entitled to possession under the agreement. The court may well have concluded that defendants' occupancy was with plaintiff's consent and in accordance with their right. Although it is stated in the bill of exceptions with reference to Mrs. de Beaulieu's testimony "That she never tried to rent the real property because the Mortgage Guarantee Company told her not to rent it," there is no evidence that defendants refused to rent the property or prevented plaintiff from so doing. No one came to rent the property while defendants were in possession. Plaintiff rejected one offer by a prospective tenant. Defendants' occupancy of the property with plaintiff's consent was wholly consistent with its being available for rent. After being in possession for a time, defendant, Mrs. de Beaulieu, left the property and "when she came back the plaintiff had moved defendants' things out and was in possession and remained in possession for about two days and then left." In regard to the claim that defendants prevented plaintiff from

obtaining a loan on the property, it appears, according to the record, that while defendants were in possession of the property "On an occasion while she (Mrs. de Beaulieu) was talking on the telephone two gentlemen came to appraise the real property and overheard her telephone conversation, and what she said over the telephone was not complimentary towards the plaintiff. She did not make any comments to the appraisers concerning Mrs. Haime's credit standing, but on other occasions might have said something to other persons concerning Mrs. Haime's credit standing." It does not necessarily follow that such conduct constituted a breach of trust, bad faith, or an obstruction to plaintiff's obtaining a loan on the property. Furthermore, there is testimony on the part of plaintiff's witness, Mr. Wagstaff, with whom plaintiff was negotiating for a loan on the property, that "I understood her (Mrs. de Beaulieu) to say afterwards that she was the owner of the building, but I don't recall even mentioning Mrs. Haime's name. What Mrs. de Beaulieu said over the telephone did not necessarily cause me to cancel the loan, because the loan did not stack up to the full $6,000.00 application." Although there is conflicting evidence, this court cannot be concerned with it, and we cannot say from the whole record that the trial court was without justification in finding that there was no bad faith, misconduct or breach of trust on defendant's part. We find no reason therefore why defendants were not entitled to interest on the sums expended by them; the agreement provided for such interest. ▇ Nor were they liable for the use and occupancy of the property. The possession thereof by them was also contemplated by the agreement and was consented to by plaintiff.

It may be true that where a mortgage gives the mortgagee no right to the possession of the mortgaged property and the mortgagor does not consent to the possession by the mortgagee, a wrongful occupation of the premises by the mortgagee imposes a liability for use and occupation (*Mahoney* v. *Bostwick*, 96 Cal. 53 [30 Pac. 1020, 31 Am. St. Rep. 175]) but as above seen those circumstances were not present in the instant case as found by the trial court.

▇ Plaintiff asserts that she should have been allowed $600, the value of the repairs and improvements made on the property by her, as a condition to defendants being declared the owners of the property. Under the agreement between the parties plaintiff was obligated to make those re-

pairs and improvements within fifteen days after defendants purchased the property from the mortgage company. It was stipulated at the trial that, except as thereafter pointed out to the court, the written agreement, reference to which has heretofore been made, sets forth the rights and liabilities of the parties. There is no evidence contrary to the terms of that written agreement, which provided that unless plaintiff complied with the agreement "she shall forfeit any and all right that she may have in and to said property, together with any and all right of demanding a deed from said Louis Hudon de Beaulieu and Bessie Estell de Beaulieu, and she hereby agrees to release and forever discharge said Louis de Beaulieu and Bessie Estell de Beaulieu from any obligation of whatsoever kind or nature, arising out of this obligation and/or agreement or otherwise pertaining to said property." We believe the trial court was justified in concluding that if the payments were not made to defendants, plaintiff should lose any claim to the value of the improvements.

Plaintiff asserts that she was not allowed by the interlocutory decree a reasonable time in which to make the payments to defendants, contending that the first interlocutory decree of August 7, 1940, allowing her thirty days called for an excessive amount, and that the time there given should not be calculated as a part of the time available, and that when the modified interlocutory decree was made on October 4th, she was given only ten days in which to make the payments. However, under the additional circumstances here presented we cannot agree. She was obligated under the agreement to make the payment on or before March 1, 1940. She failed to make it through no fault of defendants as we have seen and that failure under the agreement would end her rights. We find no evidence in the record where she at any time thereafter tendered the payments to defendants in the amount she admitted to be due or in any other amount. As far as appears she did not have the funds available at any time. While the amounts specified in the first interlocutory decree may have been excessive by the inclusion therein of improper items, we are of the opinion that under all of the circumstances the trial court did not abuse its discretion in the respect claimed.

Plaintiff claims that both the first interlocutory decree and the modified interlocutory decree were erroneous in fixing the interest payable by her on the moneys advanced by defendants at 7 per cent per annum rather than 6 per

cent called for in the written agreement. But she does not specify in her bill of exceptions the particulars wherein the evidence was insufficient to support the 7 per cent interest rate. She does not specify that the evidence was insufficient to support the allowance of 7 per cent interest and that the only evidence on the subject called for 6 per cent. The most she specifies is that the evidence does not warrant the allowance of any interest whatsoever. In the absence of specifications of the particulars wherein the evidence is insufficient to support the findings, the question will not be reviewed on appeal. (*Regoli* v. *Stevenson,* 179 Cal. 257 [176 Pac. 158].) The rate of interest payable was a matter of evidence rather than a matter of law as contended by plaintiff. If the evidence established that 7 per cent was to have been paid that would be controlling.

Finally plaintiff asserts that evidence was improperly excluded. All that appears from the record is that Mrs. de Beaulieu testified that "what she said over the telephone (when two appraisers were at the property) was not complimentary towards plaintiff" and on other occasions she "might have said something to other persons concerning plaintiff's credit standing." According to the bill of exceptions "The counsel for the plaintiff then asked her what she said and the court refused to permit her to answer, whereupon counsel for plaintiff stated to the court that the conversation might disclose that she said something derogatory towards the property, and the court then stated that if counsel wanted to find out he could do so outside the courtroom." It does not appear whether the question referred to the purported statements on the telephone while the appraisers were at the property or the other occasions on which Mrs. de Beaulieu might have made statements to other persons concerning plaintiff's credit rating. If it were the former, we have heretofore seen that whatever statements were made they did not cause the prospective lender to refuse to make the loan. If it were the latter, there is nothing to indicate that the statements were not complimentary to plaintiff's credit rating, in which event they would not have benefited plaintiff's case and further it does not appear whether the statements were relevant. It cannot be said that prejudicial error was committed.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Traynor, J., and Peters, J. pro tem., concurred.