[Civ. No. 11910. Third Dist. Sept. 25, 1968.]

LANE & PYRON, INC., Plaintiff and Respondent, v. MERLE C. GIBBS, Defendant and Appellant.

T. N. Petersen for Defendant and Appellant.

Ronald F. Sypnicki for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant Gibbs cashed five checks totaling $1,900 at Harvey's Wagon Wheel and Harrah's Club, gaming establishments located on the Nevada side of Lake Tahoe. When the checks were returned unpaid for lack of sufficient funds, the two clubs assigned them to plaintiff for collection. After a nonjury trial the Sacramento municipal court gave judgment for the plaintiff and Gibbs appealed. The appellate department of the Sacramento superior court affirmed the judgment, with one judge dissenting, then certified the case for transfer to this court. The transfer was ordered.

As a matter of California law, "the owner of a gambling house who honors a check for the purpose of providing a prospective customer with funds with which to gamble and who then participates in the transaction thus promoted by his act cannot recover on the check." (*Hamilton* v. *Abadjian,* 30 Cal.2d 49, 52 [179 P.2d 804].) Gibbs' answer alleged that he had cashed the five checks for the known purpose of gambling

and had lost the money to the respective gambling houses. By raising the defense of illegality described in *Hamilton* v. *Abadjian, supra,* the answer posed these issues: (a) whether Harvey's and Harrah's had cashed Gibbs' checks for the purpose of supplying him with gambling funds, and (b) whether Harvey's and Harrah's had participated with Gibbs in the gambling transactions promoted by the check cashing. Neither express findings nor a memorandum opinion reveals the fact finder's disposition of these issues of fact. Unfortunately for the sake of an adequate record on appeal, both parties waived findings by failing to request them.[1] We do have a reporter's transcript.

The trial was quite brief. Plaintiff offered the five checks in evidence, then, through Gibbs as an adverse witness, established that he had cashed the checks at Harvey's Wagon Wheel and Harrah's Club and that the checks remained unpaid. Plaintiff then rested. Aside from inconsequential discrepancies, the defense evidence was clear enough. Gibbs testified that Harvey's Wagon Wheel had offered one Art Nelson free transportation by private plane, weekend lodging, meals and drinks for himself and guests. Gibbs was one of Nelson's guests. Each was supplied an airplane-shaped lapel pin identifying him as a guest. Gibbs lost $1,100 in gaming, possibly at other clubs as well as Harvey's and Harrah's. During a single night he cashed the series of five checks at Harvey's and its neighbor, Harrah's. The transactions did not take place at the gaming tables but at cashier's cages, located 15 to 20 feet from the nearest game. The checks were exchanged for cash. No restrictions were placed on the money's use. Both establishments feature food, drink and entertainment as well as gambling. Harvey's enterprise also includes a hotel. Gibbs admitted that he was free to walk out with the money or to spend it on food, liquor or entertainment. He testified without contradiction that he lost at Harvey's gaming tables the proceeds of the checks cashed there and at Harrah's the proceeds of the checks cashed there. A fellow guest testified that Gibbs had gambled and lost in each establishment.

Traditionally, a right originating in another state is enforced in the courts of the forum, unless enforcement

---

[1] Code of Civil Procedure section 632 provides in part: ''In municipal courts written findings of fact and conclusions of law shall be deemed waived unless they shall be expressly requested by one or more of the parties at the time of the trial. . . .''

offends deeply held notions of local public policy. (*Biewend* v. *Biewend*, 17 Cal.2d 108, 113 [109 P.2d 701, 132 A.L.R. 1264]; *Nevcal Enterprises, Inc.* v. *Cal-Neva Lodge, Inc.*, 194 Cal. App.2d 177, 179-180 [14 Cal.Rptr. 805]; Ehrenzweig, Conflict of Laws (1962) p. 480 et seq.) ■ As pointed out in *Hamilton* v. *Abadjian, supra,* 30 Cal.2d at page 51, the courts of Nevada as well as California refuse to lend their process to the collection of gambling losses. Hence California's rejection of such claims is an application of Nevada law as well as domestic public policy. In the years since *Hamilton* v. *Abadjian* the Nevada courts have reiterated the principle withholding judicial enforcement of gambling debts. See, for example, *West Indies* v. *First Nat. Bank of Nevada*, 67 Nev. 13 [214 P.2d 144], decided in 1950, and *Wolpert* v. *Knight*, 74 Nev. 322 [330 P.2d 1023], decided in 1958.[2]

■ General standards of appellate review apply to appeals from municipal courts transferred for decision to the courts of appeal. (Code Civ. Proc., § 988t.) Where findings are waived in the trial court and appellate reversal is sought on factual grounds, all findings necessary to support the judgment will be implied; if there is any substantial evidence to support the judgment, it must be affirmed. (*Haime* v. *de Beaulieu*, 20 Cal.2d 849, 852 [129 P.2d 345]; *Mastrofini* v. *Swanson*, 114 Cal.App.2d Supp. 848, 849-850 [250 P.2d 764].) Findings must extend to all issues of fact in the case. (Code Civ. Proc., § 632.) In view of the issue of illegality raised by Gibbs' answer, the present judgment rests upon implied findings of (a) nongambling purpose, that is, the clubs did not cash the checks for the purpose of supplying gambling funds; or (b) nongambling use, i.e., that the proceeds were not used for gambling in the check cashers' clubs. (*Hamilton* v. *Abadjian, supra.*)

Before 1967 lawsuits for the collection of gambling-tinged checks were shaped by certain presumptions and by the then

---

[2] Plaintiff cites *Intercontinental Hotels Corp.* v. *Golden,* 15 N.Y.2d 9 [203 N.E.2d 210]. In that case the New York Court of Appeals noted New York's legalization of various forms of gambling and held that judicial enforcement of a Puerto Rico gambling check offended no prevalent New York concept of morality. Plaintiff also points to varieties of gambling sanctioned by California law such as pari-mutuel wagering and draw poker, quoting the observation that "In these modern days Californians cannot afford to be too pious about this matter of gambling." (*Nevcal Enterprises, Inc.* v. *Cal-Neva Lodge, Inc., supra,* 194 Cal.App.2d at p. 180.) Although granting a measure of logic to such arguments, this intermediate appellate court may not blink at public policy doctrines emanating from a higher tribunal.

character of these presumptions under California law. It was presumed that the check had been given for sufficient consideration, that the transaction was legal and not against public policy. (*Hamilton* v. *Abadjian, supra,* 30 Cal.2d at p. 52.) The burden of proof of unlawful purpose was upon the person asserting illegality. (*Id.,* p. 53.) These presumptions, although disputable, were evidence in the case, adequate to support a finding even in the face of contrary evidence. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529]; see 18 Cal.Jur.2d, Evidence, § 67.) Faced with the defense of a gambling purpose, the plaintiff in a pre-1967 trial could prove a prima facie case by establishing the defendant's authorship of the check and its nonpayment. The fact trier could weigh the presumption of regularity against the evidence of illegality and, if so impelled, find in favor of the former and against the latter.

Trial of the present case occurred in April 1967, hence was governed by the new Evidence Code. (Evid. Code, § 12.) ▮ That code, in section 600, subdivision (a), declares: "A presumption is not evidence." Section 600, subdivision (a), is aimed specifically at abolishing the rule of *Smellie* v. *Southern Pac., supra,* which classified rebuttable presumptions as evidence. (See Comment, Assembly Com. on Judiciary, following Evid. Code, § 600; Witkin, Cal. Evidence (2d ed. 1966) § 217.)

The presumptions of consideration and legality noted in the *Hamilton* case in 1947 were statutory, being then expressed in sections 1614 and 3105, Civil Code, and section 1963, Code of Civil Procedure. In connection with the 1965 adoption of the Evidence Code, these statutes were subjected to extensive amendment and repeal. ▮ The former presumption of legality (Code Civ. Proc., § 1963, subd. 1) has been supplanted by a statutory rule placing upon the party claiming illegality the burden of proof on that issue.[3] ▮ The former presumption of fairness and regularity (Code Civ. Proc., § 1963, subd. 19) has been replaced by a statutory maxim cautioning that private transactions are (usually) fair and regular. (Civ. Code, § 3545.) ▮ The presumption of consideration attending negotiable instruments (Code Civ. Proc., § 1963, subd. 21; Civ. Code, § 3105) has been replaced by a rule declaring that the defendant's admitted signature entitles the holder to recover unless the defendant establishes

[3]Evidence Code, section 520: "The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue."

a defense. (Com. Code, § 3307, subd. (2).) The statutory declaration that a written instrument is presumptive evidence of a consideration (Civ. Code, § 1614) retains an unchanged surface appearance.

In terms of proof, findings and review, this action diverges sharply from the pre-1967 gambling check cases. The plaintiff embarked on the trial of the present case without the benefit of presumptions as evidence. Although the written checks created a presumption of consideration (Civ. Code, § 1614), the defense here was essentially one of illegality 'rather than lack of consideration. (See *Graham* v. *Larimer,* 83 Cal. 173, 176-178 [23 P. 286].) Under current California law defendant Gibbs had the burden of proof of illegality.[4] The latter burden is of the ''nondisappearing'' variety; it is one of the elements included in the ultimate submission to the fact trier, imposing on its bearer the task of creating belief by a preponderance of the evidence, that is, a belief that the existence of the fact is more likely than its nonexistence.[5]

 Whether the defense met the burden of proof of illegality was a question for the fact trier; on review, the question is whether there is substantial evidence to support its conclusion. (*Estate of Johnson,* 182 Cal. 642, 643-644 [189 P. 280]; *Gularte* v. *Martins,* 65 Cal.App.2d 817, 820-821 [151 P.2d 570]; cf. Harvey, *op.cit. supra,* p. 434; 2 Lincoln L.Rev. 101, 109.) If there is any substantial evidence or any reasonable inference to be drawn from the evidence to support the findings of the fact trier (here the implied findings against

---

[4]Evidence Code, section 500: ''Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting.''

See also Evidence Code, section 520, footnote 3, *supra;* Witkin, Cal. Evidence (2d ed. 1966) §§ 197, 199.

[5]Evidence Code, section 115: '' 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt.

''Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.''

See also Witkin, Cal. Evidence (2d ed. 1966) §§ 193, 194, 207, 208; Harvey, Evidentiary Burdens and Presumptions, Cal. Evidence Code Manual (Cont.Ed.Bar 1966) pp. 408-409.

gambling purpose and gambling use), the appellate court will not determine the fact issues contrary to those findings. (*Smith* v. *Bull,* 50 Cal.2d 294, 306 [325 P.2d 463]; *Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384].) ▮▮▮ Substantial evidence is not *any* evidence; to achieve substance, the evidence must be reasonable in nature, credible and of solid value. (*People* v. *Bassett,* 69 Cal.2d 122, 132, 138 [70 Cal.Rptr. 193, 443 P.2d 777]; *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Municipal Water Dist.,* 236 Cal.App.2d 238, 257 [45 Cal.Rptr. 793]; *Estate of Teed,* 112 Cal.App.2d 638, 644 [247 P.2d 54].)

▮▮▮ Aside from demonstrating that the two clubs placed no restriction on the customer's use of the money and that nongambling objectives were available if the customer chose to spend money on them, plaintiff produced no evidence whatever of a nongambling purpose or nongambling use. On appeal, plaintiff relies on the absence of restrictions, arguing that *Hamilton* v. *Abadjian, supra,* does not prevent recovery where no restrictions exist. Such an interpretation of the Hamilton case is too narrow. Although the phrase "without restriction on its use" is often used, the real issue is whether the check was cashed "for the purpose of providing funds" to gamble with the donor. (*Braverman* v. *Horn,* 88 Cal.App. 2d 379, 381 [198 P.2d 948]; cf. dictum in *Harrah* v. *Craig,* 113 Cal.App.2d 67, 70 [247 P.2d 855].)

Viewing the record to find substantial evidence or evidence to justify a reasonable inference of a nongambling purpose or nongambling use, we find none. This is not a case of conflicting evidence. The only inferences reasonably available from uncontradicted evidence were the gambling purpose of the expense-paid excursion to Lake Tahoe; the gambling purpose of the cashier's booths in or near the gaming areas; the gambling purpose of the customer in cashing the checks; the gambling purpose of the club in supplying the check cashing service; and the mutual participation of customer and club in gambling with the proceeds. The absence of a commitment that the customer would use the money for gambling; the availability of nongambling objectives on which to spend the money; the customer's freedom to spend the money for such objectives; the "neutral" appearance of the cashier's booths; their location at a particular distance in feet from the nearest game—such circumstances provided no reasonable or solid evidence of a nongambling purpose or nongambling use. They offered no more than barely combustible fuel for speculation.

■ Plaintiff points to some discrepancies in Gibbs' testimony, arguing that the trial court was free to disbelieve his testimony of gambling with the check proceeds. Questions of credibility, of course, are for the fact trier. There is the thrust of the rule that a fact trier may not disregard the unimpeached and uncontradicted testimony of a witness (*Camp* v. *Ortega,* 209 Cal.App.2d 275, 281 [25 Cal.Rptr. 837]) and the parry of the affirmation that the fact trier may do so if he does not act arbitrarily (*ibid.,* p. 283). The argument ignores the witness who testified to Gibbs' gambling in each of the two clubs. Further, it rests upon the assumption that the trial judge did in fact disbelieve Gibbs. In passing upon the sufficiency of evidence to sustain facts found below, appellate courts should not move beyond probabilities into conjecture. (*Showalter* v. *Western Pac. R.R. Co.,* 16 Cal.2d 460, 478 [106 P.2d 895].) There is nothing in the record, not even conflicting evidence, to support the assumption that the trial court indulged in any judgment of credibility. The doctrine implying findings in favor of the prevailing party does not, we think, demand an assumption so wholly conjectural. Finally, the assumption is practically foreclosed by the trial judge's observation at the end of the trial: "The Court is only concerned with the applicability of law. There is no reason to argue the facts; facts are quite clear to the Court."

There being no substantial evidence to support the implied findings upon which the judgment must rest, the judgment must be reversed. It is appropriate to note that refusal to be diverted by a camouflaged cashier's booth is not an extension of California public policy. Rather, it is quite consistent with Nevada law: " 'In determining the purpose for which the [cash] was advanced, the significance and relevancy of the surrounding circumstances and environment are readily apparent. If the advancement was made in a gambling establishment in full operation, by the proprietor or his agent, to one then, or immediately prior thereto, engaged in gambling and who ran short of money, the game still being in progress, or if his conversation or the circumstances indicated he intended to resume playing, the purpose of the advancement becomes clear. On the other hand, if the advancement was at a different place than a gambling establishment, or if same was not made at a time when the recipient had been recently playing, and some other, legitimate, purpose is stated by the recipient, then no presumption or inference that the advancement

was for a gambling purpose is justifiable from such circumstances.' '' (*Wolpert* v. *Knight, supra,* 330 P.2d at p. 1025, quoting *Craig* v. *Harrah,* 66 Nev. 1 [201 P.2d 1081 at p. 1084].)

Judgment reversed.

Pierce, P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied October 21, 1968, and respondent's petition for a hearing by the Supreme Court was denied November 20, 1968.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.