STONE v. ROBINSON et al. (No. 1263.)

(Court of Civil Appeals of Texas. Amarillo. May 22, 1918.)

1. VENDOR AND PURCHASER ⟨═⟩39—VENDOR'S LIEN NOTES—LEGALITY OF OBJECT—PARTICIPATION IN LOTTERY.

Although the vendor at the time of the contract had no notice nor information of the vendee's intention to dispose of the land by lottery, if, prior to the execution of vendor's lien notes and deed, he learned of such scheme and participated in it, he could not recover on the notes.

2. VENDOR AND PURCHASER ⟨═⟩39—VENDOR'S LIEN NOTES—LEGALITY OF OBJECT—PARTICIPATION IN LOTTERY—SUFFICIENCY OF PARTICIPATION.

In such case, the question of the vendor's participation in the profits of the lottery was not determinative of his participation in the illegal scheme, and the mere fact that he was not to receive any of the profits did not negative his participation.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by J. B. Stone against Jim Robinson, Jr., and others. Judgment for defendants and plaintiff appeals. Affirmed.

Bean & Kleft, of Lubbock, for appellant. W. D. Benson and Percy Spencer, both of Lubbock, for appellees.

BOYCE, J. This case was before this court once before, Stone v. Robinson, 180 S. W. 135. On this appeal the parties acquiesce in the construction of the power of attorney as adopted by this court on the former appeal, and entirely different questions are now presented.

The suit was brought by appellant, Stone, on certain vendor's lien notes, executed by appellee, Robinson, and to foreclose the vendor's lien retained to secure the payment of said notes on certain lots and blocks platted as an addition to the town of Lubbock, Tex. The defense on which the judgment of the court below is based was that the contract by which said property was sold by Stone to Robinson was unenforceable because it was the purpose and intention of the said Robinson to subdivide the property which was sold and conveyed as acreage property into lots and blocks and resell the same by lottery, in violation of law; that Stone knowingly aided and abetted the carrying out of said plan, and is therefore not entitled to recover on the notes executed and delivered as a part of said illegal purpose.

The evidence shows that some time, from one to three months, before the execution of the deed to said property and the vendor's lien notes sued upon, Stone and Robinson entered into a written contract by which Stone agreed to sell said property to Robinson for a consideration of $9,500, $1,000 paid in cash at the time of execution of contract and $1,500 additional in cash before delivery of deed, the balance of the consideration to be evidenced by two notes, each for $3,500. There is some dispute as to the amount of the cash consideration, but we do not think this material to a decision of the case. The contract was closed in accordance with the provisions of this contract by the execution and delivery of the deed by Stone, and the execution and delivery by Robinson of the notes sued upon, the deed retaining a vendor's lien to secure the payment of said notes. The contract and deed executed in pursuance thereof described the land as acreage property, as it had not been platted as town property at the date of the original contract. Prior to the execution of the deed the property was subdivided and platted as town property, and Robinson entered upon the execution of his purpose to sell the same by a lottery plan, which was to sell the unimproved lots at $30 per lot, giving to the purchaser of each lot a ticket and then have a drawing, the holder of the lucky number to receive, without further charge, the lots having the improvements thereon, consisting of a nice dwelling house with other appurtenant improvements. Stone did not know of Robinson's purpose at the time he executed the original contract, but learned of it prior to the execution of the notes and deed, and during this time he assisted the said Robinson in said scheme to some extent by "boosting Robinson's sales," using appellant's own statement. At the time of the execution of the deed said Stone also executed an agreement and power of attorney, copied in the former opinion in this case, by the terms of which he agreed to release any lot sold except the lots on which the improvements were situated, upon payment of the sum of $30. The evidence was such as to warrant the finding that this was done for the purpose of accommodating the contract to the lottery scheme.

Special issues were submitted and answered by the jury as follows:

"Special Issue No. 1: At the time of the original contract of sale, did J. B. Stone know that the property was being purchased with the intention of disposing of the same by lottery? Answer: No.

"Special Issue No. 2: Did the plaintiff, J. B. Stone, at the time of the execution of the deed to Jim Robinson, Jr., know that the property purchased was to be used as and disposed of by lottery? Answer: Yes.

"Special Issue No. 3: Did the plaintiff, J. B. Stone, knowingly receive any of the proceeds derived from said lottery, in payment for said property? Answer: Yes.

"Special Issue No. 4: Did the plaintiff, J. B. Stone, know, at the time he executed the deed to Jim Robinson, Jr., that the house on said tract of land was to be given away as a premium in drawing? Answer: Yes.

"Special Issue No. 5: Did the plaintiff, J. B. Stone, at the time of the execution of the deed to Jim Robinson, Jr., know that the vendor's lien notes received by him were to be paid, in whole or in part, out of the proceeds

realized from the sale of lots in connection with a lottery? Answer: Yes.

"Special Issue No. 6: Did the plaintiff, J. B. Stone, tell any purchasers, or prospective purchasers, of said lots that the house was to be given away as a premium? Answer: Yes.

"Special Issue No. 7: Did the plaintiff, J. B. Stone. by word or act, encourage the purchase, or prospective purchase, of any lot with a chance at the house? Answer: Yes."

In addition to the foregoing issues the court, at Stone's request, submitted the following special issue:

"Did the plaintiff and the defendant, Jim Robinson, Jr., enter into an agreement whereby it was agreed that the said J. B. Stone should participate in the profits of the sale of said lots by lottery?" To which the jury answered, "No."

Two assignments are presented: They both assert that the judgment is contrary to the findings of the jury, the first being general and the second specifically affirming that this is true because—

"the jury having found in answer to special issue No. 1 that the plaintiff did not know, at the time of the original contract of sale, that the property was being purchased with the intention of disposing of it by lottery, and having further found, in answer to the first special charge requested by the plaintiff, that there was no agreement between plaintiff and Jim Robinson, Jr., that plaintiff should participate in the profits of the sale of said lots by lottery, and there being no other finding of the jury showing that plaintiff profited by the alleged lottery, judgment should have been in favor of plaintiff for the amount of the notes sued on, with foreclosure of vendor's lien."

[1] For the purpose of the decision we will assume that it is the law in this state that when the contract sued upon is not itself illegal, but it was the purpose of one of the parties to put the subject-matter of the contract to an illegal use, the other party may not be denied recovery unless the facts are sufficient to show a participation on his part in the unlawful purpose. Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808; Houck v. Anheuser-Busch Brewing Association, 88 Tex. 184, 30 S. W. 870; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418. See, also, comment on last-named case in Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 639, 71 Am. St. Rep. 837. Appellant does not, by these or other assignments, question the sufficiency of the evidence to show that Stone aided in various ways the carrying forward of the unlawful plan, but contends that aid therein so given should not have the same effect as if the participation was the result of knowledge, and intent to participate therein, of the unlawful design at the time of the execution of the contract. The effect of the argument is that the rights of the parties were fixed at the time of the execution of the original written contract, the deed and notes were in consummation thereof, and, since the original contract was pure, it cannot be contaminated by appellant's subsequent participation in the illegal design of appellee Robinson. Contracts of a character we are considering do not themselves provide for the doing of anything illegal. They impose obligations that are themselves perfectly legitimate, and which may be imposed and assumed in the transaction of a proper and legal business; but, on the ground of public policy and as a means of discouraging the perpetration of crime and wrong, not for the purpose of protecting either one of the guilty participants in the wrong, the law refused to lend its aid to the enforcement of rights in favor of any of the parties who are shown to have been engaged with the other in the transaction out of which the appeal to the courts arises which involved the commission of some crime or wrong condemned by law. We have been referred to no authority which holds that in the case of the unexecuted contract the participation, in order to place the party seeking the relief of the court outside its protection, must be the result of an intent formed at the time of the execution of the contract. When the theretofore innocent party to an executory contract learns of the unlawful purpose of the other, it seems that he may refuse to proceed with it, and will be justified by the law in his refusal. Mechem on Sales, § 1010; C. J., vol. 13, p. 517, § 475; 9 Cyc. 571. The original ignorance of one party to a contract that any unlawful purpose was contemplated by the other party might be a material circumstance in arriving at the real purpose and intent of such party, and as determining the character of acts which do not unequivocally indicate the intention to aid the other in such matter, but we think it would be an unsafe proposition, and one not founded on the reason for the general rule, to say that a party, innocent of wrongful purpose at the time of the execution of an executory contract, might thereafter actively aid and participate in the commission of the wrong intended by the other party in the use of the subject-matter of the contract, and yet invoke the assistance of the court in the enforcement of rights under the contract consummated after his entry into the unlawful plan of the other contracting party. For instance, the authorities all hold that the crime intended to be consummated by one of the parties might be so heinous that the sale of the means of the commission of the crime by one with knowledge of the other's purpose would itself be a participation in the crime and preclude a recovery on the contract of sale. One with knowledge of the purchaser's purpose, selling a pistol with which to commit murder, or arsenic with which to poison another, or goods to aid the public enemy, so participates in the crime committed by the use of such articles by the other that he stands condemned by law and good morals, and certainly could not successfully sue and recover the price agreed to be paid by the purchaser. Hanauer v. Doane, 12 Wall. 342, 20 L. Ed. 440; Mechem on Sales, §§ 1015, 1016. Now, suppose that such a seller had a

preliminary contract with his purchaser, and a deposit of part of the purchase price, but the knowledge of the purpose of the purchaser came to him after the execution of such contract, but before he delivered the property and took the purchaser's notes for the payment of the balance, would such fact make him the less guilty and open the doors of the courts that would have been closed against him in the circumstances first stated? We think not. The participation or aid in the other's wrong ought, if the reason for the general rule is to be followed, to defeat the recovery if it occurred at a time when that purpose would have been thwarted by a refusal to proceed further with the contract. We think, therefore, that the finding that Stone did not know of the unlawful purpose of Robinson at the time of the original contract would not avail him, if prior to the execution of the notes he became informed of such purpose and then aided in the execution thereof.

[2] Neither do we think the second finding referred to in the assignment above quoted, "that there was no agreement between plaintiff and Jim Robinson, Jr., that plaintiff should participate in the profits of the sale of said lots by lottery" is conclusive. It is no doubt true that if one shares in the benefit of the violation of the law he becomes a participant in the wrong, but his sharing in the profits does not seem to be the sole or true test of participation. "One may be deemed to be a participant in the unlawful purpose if with knowledge thereof he does anything which facilitates the carrying out of such purpose." R. C. L. vol. 6, p. 697; Houck v. Anheuser-Busch Brewing Ass'n, 88 Tex. 184, 30 S. W. 870, C. J., vol. 13, p. 519.

We therefore overrule both appellant's assignments of error, which action results in an affirmance of the judgment.

HUFF, C. J., not sitting, being absent in Austin, sitting with committee of judges.