## SIMPSON v. WILLIAMS RURAL HIGH SCHOOL DIST. et al.

### No. 5323.

Court of Civil Appeals of Texas. Amarillo.

June 30, 1941.

Rehearing Denied Sept. 8, 1941.

Mahan & Broughton, of Childress, for appellant.

O. L. Bell, of Quanah, and Alfred M. Scott, of Austin, for appellees.

JACKSON, Chief Justice.

The appellant as relator made application to the District Court of Hardeman County to obtain a writ of mandamus directing and requiring the president and secretary of the School Board of the Williams Rural High School District in said county to sign and affix the corporate seal of the district to certain bonds known and designated as Williams Rural High School District Refunding Bonds. The appellant bases his right to the writ primarily on an order of the trustees of the school district directing that the bonds be issued to refund interest coupons in the sum of $5,880 issued by the district on July 15, 1929.

The appellees as respondents urged a general denial, pleaded duress, fraud, limitation and accord and satisfaction.

The record, by the agreement of the parties, the testimony offered and the findings of the court filed, discloses that the Williams Rural High School District of Hardeman County is a duly organized rural high school district created under the laws of the State; that J. C. Lindsey is the president and Howard Powell is the secretary of the board of trustees of the district and L. O. Smith, Jess McClure, C. I. Fellers, Clarence Horton and Will Bybee are the other members of the board.

On July 15, 1929, the school district issued bonds designated as Williams Rural High School District School House Bonds, Series 1929. The bonds matured as follows: $1,000 on January 15, 1931, 1933, 1935 and 1937; $1,000 on January 15th in each of the years 1939 to 1956, both inclusive, and $2,000 on January 15th in each of the years 1957 to 1965, both inclusive. The bonds bore interest at the rate of 6% per annum payable semi-annually which was evidenced by interest coupons attached to each of said bonds.

The school district defaulted in the payment of the bonds maturing in 1931, 1933 and 1935 and also defaulted in the payment of all of the interest that had matured on the entire series of bonds to August 5, 1935.

In July, 1935, Mr. John Edding who stated that he was representing Mahan-Dittmar & Company of San Antonio, Texas visited the trustees of the Williams Rural High School District; discussed with them refunding the $40,000 bond issue; advised them he could save the district a lot of money if they would allow him to handle the refunding transaction; the interest rate would be reduced; the past due bonds paid and the bonded indebtedness evidenced by the $40,000 bond issue would be ahead of the board and none of it behind it. He made arrangements with the trustees of the district for his company to, and it did, handle the transaction for refunding the original $40,000 school house bond issue. Pursuant to this arrangement which was consummated by the parties the trustees on August 5, 1935, by an order duly passed issued refunding bonds amounting to $34,000 bearing interest

at 5% per annum. These refunding bonds were sold to the State Board of Education and the principal of the original bonds was satisfied.

On August 5, 1935, when the $34,000 worth of bonds were refunded, Dana R. Simpson was the owner of said bonds together with the unpaid interest thereon.

On November 2, 1938, Dana R. Simpson had in his possession interest coupons amounting to $5,880 that had been attached to the original bonds but were detached from said bonds before they were refunded in 1935.

Clarence R. Hendrix, agent for Dana R. Simpson who owned the interest coupons amounting to $5,880, about November 2, 1938, visited with and talked to certain members of the board of trustees relative to refunding said interest coupons. He met with the trustees of the district and as agent for the owner represented that the interest coupons were valid obligations; that unless the coupons were refunded the owner would sue the district on the interest coupons and close the school for that year. On account of these statements the school district passed an order reciting the issuance of the district school house bonds series 1929, the refunding thereof and in effect that the interest coupons held by Dana R. Simpson had matured and were unpaid and that the board deemed it advisable and to the best interest of the district to refund the unpaid coupons. The board for the purpose of refunding these interest coupons ordered that there should be issued bonds of the district known as Williams Rural High School District Refunding Bonds aggregating the sum of $5,880 to be dated November 10, 1938, and numbered from 1 to 30, both inclusive, giving the denomination of the bonds providing that they bear interest at the rate of 4½% per annum and directing that the bonds be signed by the president and countersigned by the secretary of the board of trustees and the corporate seal of the district impressed on each of said bonds; stipulated for and attached thereto the form of the refunding bonds to be issued; provided that there should be levied and collected a tax sufficient to pay the interest and create a sinking fund to pay the bonds as they matured. The order is upon its face regular, valid and binding. The appellant at his own cost and expense procured the printing of the refunding bonds; had the proceedings submitted to the attorney general who on December 7, 1938, advised the attorneys of the appellant that the bonds were approved by the Department of the Attorney General on the condition that 80% of the holders of the interest coupons consented and a non-litigation certificate was furnished with the printed bonds. Appellant forwarded the printed bonds to the First National Bank at Quanah and requested the president and secretary of the Board of Trustees of the Williams Rural High School District to sign said bonds and impress the corporate seal thereon, which they refused and still refuse to do. The requirement for the levying of a tax necessary to pay the $5,880 plus interest at 4½% for twenty years does not exceed the constitutional limit of taxes for the district.

On February 24, 1939, the trustees of the Williams Rural High School District passed an order the purpose of which was to set aside and repeal the order passed by the Board on November 2, 1938, by which the interest coupons were refunded.

Upon a hearing before the court judgment was rendered that appellant's application for a mandamus be in all things denied and the appellees recover their cost from which judgment this appeal is prosecuted.

We shall not consider separately the numerous assignments of error urged by appellant since in our opinion a general discussion will dispose of the material contentions presented.

The record discloses that Mahan-Dittman & Company through its agent, John Edding, made an agreement with the trustees of the school district to handle, and did handle, the refunding of the $40,000 school house bonds, series 1929. The record fails to show that Mr. Edding or his company was the agent of or connected with or in anywise authorized to represent the appellant. The statements of Mr. Edding to the trustees of the district to the effect that he would save them interest on the bonds and more than $5,000 in money and make the indebtedness on the bonds payable in the future instead of having it in default would not bind appellant, whether such representations were fraudulent or otherwise. This is all the testimony in the record that tends to support the finding by the court that the trustees believed when the refunding bonds were issued on August 5, 1935, that the principal and interest on

the outstanding bonds were paid off and discharged. Since appellant is in no way connected by the record with these statements this finding is immaterial on the issue of fraudulent representations and certainly does not establish accord and satisfaction.

Clarence R. Hendrix, the agent of appellant, on or about November 2, 1938, represented to the trustees of the school district that the interest coupons evidencing $5,880 were binding obligations; that the discharge of the interest coupons by refunding bonds would be legal and unless the coupons were paid or refunded the appellant would bring suit and tie up the school of the district for a year. On these representations the court found the school trustees passed the order refunding the $5,880 evidenced by the interest coupons of the appellant on November 2, 1938, and but for such statements by Mr. Hendrix the order would not have been passed.

The interest coupons were exhibited to the school board whose intelligence and business ability are not questioned. They were binding obligations. The issue of bonds to refund such coupons was legal and there is no testimony tending to show that the appellant would not have sued the district on the interest coupons had they not been refunded.

■ In order for the appellees to defeat appellant's suit because of false representations, it was necessary for them to show that the appellant or his agent made representations which were false, were as to material facts, were made with the intent and design to induce appellees to refund the interest coupons and that such representations were relied upon by them. The testimony wholly fails to establish the elements constituting fraud based on false representations.

■ In our opinion said statements by Hendrix are wholly insufficient to show duress of property as claimed by appellees.

In Dale et al. v. Simon et al., 267 S.W. 467, 470, the Commission of Appeals says: "Where a demand made is wrongful or unlawful, and it is necessary for the party making such demand to resort to the courts to enforce same, there is no duress, for the one upon whom demand is made has adequate means of protection, and there is no imminent restraint."

The demands of appellant's agent were not wrongful nor unlawful.

In Thrower et al. v. Brownlee, 12 S. W.2d 184, 187, the Commission of Appeals holds: "It does not alter the rule that threats were made to forfeit the escrow deposit, unless Brownlee went on with the purchase. This could only be enforced by a suit, and a threat to sue is not that duress of property that will render a payment in compliance involuntary and recoverable. If Brownlee's earnest money deposit was procured by fraud, he would have abundant opportunity in a suit to be heard upon that matter, so that his proceeding was voluntary. See 9 Rul.Cas. Law, p. 722, § 11."

The court finds that the interest coupons were barred by limitation on November 2, 1938, at the time the trustees passed the order to refund the interest coupons.

■■ The law is that when an obligation is extinguished by operation of law instead of by payment or satisfaction thereof by the debtor, a moral obligation to pay remains and this is a sufficient consideration for the new promise.

In Cotulla v. Urbahn, 104 Tex. 208, 126 S.W. 1108, 135 S.W. 1159, 34 L.R.A.,N.S., 345, Ann.Cas.1914B, 217, the Supreme Court holds that since an early date in Texas it has been held that an action on an obligation that has been barred by limitation and thereafter renewed is on the new promise the original indebtedness serving to furnish a consideration therefor.

In Frost v. Fowlerton Consolidated School Dist. No. 1 et al., Tex.Civ.App., 111 S.W.2d 754, it is held that the school district had the power to renew a claim for a refund of taxes against any defense of limitation since it was authorized to renew and extend such past due obligation. Limitation is not a defense to the contract to refund.

The order passed by the trustees of the school board on February 24, 1939, attempting to cancel, rescind and set aside the order of the board made November 2, 1938, ordering the issuance of the refunding bonds involved in this litigation was ineffective and invalid.

Article 2789, Vernon's Annotated Texas Civil Statutes, provides: "Where bonds have been legally issued, or may be hereafter issued, by any town or village incorporated for free school purposes only, or any common school district, independent

school district, consolidated common school district, consolidated independent school district, county line school district, consolidated county line school district, or rural high school district, new bonds, bearing the same or a less rate of interest, may when ordered by the governing board thereof be issued either as term bonds or as serial bonds, maturing in either case within forty (40) years from date of issue, and may be made optional on any interest payment date as the governing board shall direct; provided further, that matured interest coupons of such district may be refunded in like manner."

■ Under this statute the school district acting through its board of trustees had been authorized by the Legislature to issue bonds with which to refund the matured interest coupons held by appellant and it could not by an ex parte order repudiate or rescind the order which was a valid contract.

In Corneil v. Swisher County et al., Tex. Civ.App., 78 S.W.2d 1072, the commissioners' court had entered into a contract by the terms of which Mr. Corneil was authorized to collect delinquent taxes and the commissioners court later, by an order entered upon its minutes, declared said contract at an end and that no further compensation would be paid under the terms of such contract. This court held that the county acting by its commissioners could not repudiate or cancel the valid contract into which it had entered by an ex parte order passed and spread upon its minutes.

In Superior Incinerator Co. v. Tompkins et al., 59 S.W.2d 102, 103, the Commission of Appeals held: "A contract is just as binding upon a municipal corporation as upon an individual. To determine that such a corporation may annul the obligation of its contract made with an individual would be to allow it a greater power than is possessed by the state which created it. 'The right and liability of a city in letting contracts for public improvements,' says the court in Bailey v. Mayor, etc., of City of New York, 3 Hill (N.Y.) 531, 38 Am. Dec. 669, 'are to be measured and determined by the same rules as govern individuals or private corporations. It cannot claim exemption or immunity from liability arising out of its contracts on account of its municipal capacity.' "

In the case last cited the contract involved was made between the incinerator company and the City of Dallas. The city commission had ordered the contract rescinded. The incinerator company had applied for a writ of mandamus to compel the city auditor to countersign the contract. The court held that the incinerator company had an adequate remedy at law in a suit against the city for damages for the breach of its contract and refused the mandamus. The contract was entirely executory. The incinerator company had furnished neither labor nor material to construct the plant and the city had paid no part of the consideration, hence, neither party had performed any of the obligations imposed upon it by the contract. The incinerator company did not have a liquidated claim nor had the amount thereof been determined. Not so in the instant case. The school district had issued school house bonds which it had sold and with the proceeds of the sale erected a school house for the district. It had promised to pay interest for the use of the money. The amount was agreed upon, was evidenced by the interest coupons and was a liquidated claim. In the order of the trustees the district had acknowledged the validity of the interest coupons, the amount thereof and promised to pay the debt in thirty refunding bonds, the date, amount and maturity of which was ascertained, agreed upon and became a liquidated claim. The appellant owned the interest coupons sought to be refunded and in our opinion did not have an adequate remedy at law which was as speedy, convenient and effective as a writ of mandamus.

■ An adequate remedy which will prevent resort to the writ must be "plain, accurate, certain, speedy * * * must be specific and appropriate to the particular circumstances * * * must also be equally as convenient, beneficial, and effective as the remedy by mandamus. * * * Thus the issuance of mandamus is not prevented by the fact that the relator might maintain an action for damages, or to recover money from an officer or upon a claim for which he seeks to compel the signing of a warrant, * * * or an ordinary action against a third person, where such other remedy is inadequate." 28 Tex.Jur. 528, para. 9.

In 28 Tex.Jur. 548, para. 19, the author says: "Mandamus will lie to compel a state officer to perform ministerial duties imposed upon him by law that are necessary for the performance of a valid con-

tract between the relator and the state; and on similar principles the writ may be invoked to compel public officers to perform ministerial duties in respect of entering into, signing, approving, and indorsing valid public contracts, and issuing and paying warrants for money due under such contracts."

In the same volume, para. 26, page 559, it is said: "Mandamus will lie to compel the issuance, signing or approval of a warrant or voucher for a claim against a city, county, or school district, if the claim has been reduced to judgment or otherwise definitely ascertained, so that the act sought to be compelled is merely a ministerial one."

This text is supported by the holdings in Chrestman v. Tompkins, Tex.Civ.App., 5 S.W.2d 257; Brown et al. v. Reese, 69 Tex. 589, 7 S.W. 489; Harkness v. Hutcherson et al., School Trustees, 90 Tex. 383, 38 S.W. 1120; Hood, County Judge, v. Cain, County Auditor, Tex.Civ.App., 32 S.W.2d 485.

We are of the opinion that the court erred in refusing the appellant a writ of mandamus and the judgment is reversed and here rendered directing the president and secretary of the Williams Rural High School District to sign the refunding bonds and affix thereto the corporate seal of the school district as prayed for by the appellant.