480 S.W.2d 474 (1972)
D-------- D. C--------, Appellant,
v.
T-------- W--------, Appellee.
No. 8245.
Court of Civil Appeals of Texas, Amarillo.
May 1, 1972.
*475 Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellant.
Huff & Bowers, Mike Millsap, Lubbock, for appellee.
ELLIS, Chief Justice.
This is an appeal from a judgment decreeing the enforcement of a child support agreement entered into by the child's natural father and mother who have never been married to each other. The validity of such contract is challenged by the father-appellant on the ground of the lack of consideration.
Reversed and rendered.
The child's mother, herein referred to as appellee, along with her attorneys, as plaintiffs, brought suit against the father-appellant for an alleged breach of two contracts between the appellant and appellee. The first of the two contracts, designated as "Agreement For Child Support," purported to obligate the father-appellant for the support of R________ A. C________, the natural child of appellant and mother-appellee who were never married to each other. The support agreement set out that the appellant was to pay to the appellee the sum of $125 each month "until such child reaches the age of eighteen years, or becomes married, whichever occurs first." The evidence shows that appellant had paid the total sum of $1,375 under such agreement. The plaintiffs' petition alleged that the last payment on the support agreement was made in May of 1966, and appellant was sued for sixty defaulted payments of $125 each, making the total sum of $7,500 claimed to be due thereunder as of May 10, 1971. The second contract, designated as "Settlement Agreement," dated May 13, 1966, was predicated upon a previous claim asserted by the appellee against the appellant that dealt wholly with matters other than child support, whereunder the appellant agreed to pay appellee and her attorneys the monthly sum of $300 on the 15th day of each month thereafter until a total sum of 18,000 had been paid. The plaintiffs alleged that appellant had made only two such payments, the total sum of $600, and sued appellant under the "Settlement Agreement" for the total sum of $17,400, plus interest from August 15, 1966.
*476 The appellant answered the plaintiffs' pleading by general denial and the defense of failure or want of consideration. The trial was to the court without a jury. Judgment was entered for the plaintiffs and recited separate amounts of recovery with respect to each of the two contracts. As to the "Settlement Agreement," recovery was awarded under the judgment in separate specified sums for the appellee and her attorneys, respectively, while the recovery under the "Agreement For Child Support" was awarded to the appellee alone. The award under the judgment as to the "Settlement Agreement" is not questioned in this appeal. It is from the judgment rendered against him on the "Agreement For Child Support" that the appellant has perfected this appeal.
The record discloses that the facts are undisputed. The appellant and appellee, natural father and mother, respectively, of the above mentioned minor child, signed and swore to the above designated "Agreement For Child Support" before a notary public. Those provisions of the respective agreements which are deemed pertinent to the determination of the questions raised in this appeal shall be paraphrased and/or quoted in part. In substance, the child support agreement recites that the appellant acknowledged and represented that the minor child, who was born to the appellee, "is my child, and I am therefore, and in consideration thereof, entering into the following support agreement." In addition to the monthly payments of $125 each, the appellant agreed to pay all reasonable expenses for the child's medical care, and to carry at all times a hospitalization policy upon such child. Also, appellant agreed to take out a non-cancellable policy of decreasing term insurance on his life for a term of eighteen years with the child named as beneficiary. The mother-appellee agreed that this contract shall be the basis of "all child support obligations of" [appellant], "the father of my said child." We find nothing in the record which would require the court to take judicial notice of or apply the laws of any state other than those of the State of Texas.
Upon appellant's request, the court made and entered findings of fact and conclusions of law; however, the court refused to comply with appellant's request to make a finding as to specific consideration for the agreement. In its Conclusions of Law, the court found, among other matters, that (1) the "Agreement For Child Support" constituted an enforceable contract between appellant and appellee; (2) the appellee "is the sole owner of the contractual rights contained within that contract and for enforcement of which this lawsuit is brought"; and (3) appellant had breached the contract entitled "Agreement For Child Support" by his failure to make all of the required monthly payments up to the date specified in the plaintiff's pleadings.
In appellant's points of error, he contends (1) that the court erred in failing to render judgment for appellant on the "Agreement For Child Support" because the agreement was supported by no consideration as a matter of law, and (2) alternatively, in the event absence of consideration is not established as a matter of law, the court erred in failing to make, after due request, a finding as to specific consideration to support the agreement. The appellee joined issue with appellant's assignments of error by submitting three reply points.
In support of his first point of error, appellant urges that the agreement was supported by no consideration as a matter of law because, under such agreement, the appellant received no benefit and the appellee suffered no detriment. Appellant insisted that, absent consideration, he had no obligation to support an illegitimate child. The appellee objects to the appellant's reference to the child as an illegitimate child and insists that the well-known presumption in favor of legitimacy should prevail until the party raising the issue of illegitimacy has discharged his burden of *477 controverting such presumption with sufficient and competent evidence. According to Webster's Third New International Dictionary, the word "illegitimate" is an adjective meaning "born of parents not married to each other." It is well established that legitimacy of children necessarily depends on the marriage of their parents, but in the absence of such marriage the children are illegitimate. 8 Tex.Jur.2d Bastardy § 8, at p. 525. During cross examination by appellant's counsel the mother-appellee gave the uncontroverted testimony that she was never married to the appellant, the acknowledged natural father of the child. By virtue of this evidence, the presumption of legitimacy no longer continued, and, in the absence of any further evidence on the matter, under the state of the record we conclude that the child in question would be deemed as illegitimate.
We note in appellee's brief that the possibility was mentioned that two persons may discover that there was a relationship between them which one or both of the parties believed to be in the nature of a common law marriage, but fell short of that status and was instead merely a putative relationship, and thus, the two persons would never have been married to each other. In this connection, appellee has cited various cases holding that children born of a putative relationship should nevertheless be legitimate as to both parents. In general, the cited cases dealt with situations in which there was some evidence of circumstances and/or conduct on the part of one or both of the parents of the child partaking of the nature of a common law marriage relationship. The record contains no such evidence in the instant case, and it is our opinion that the cited cases and rule relied upon are inapplicable here. When the presumption of the status of legitimacy no longer prevailed by reason of appellee's uncontroverted testimony, and in the absence of any further evidence to alter such status, we do not agree that we can with propriety speculate that some sort of relationship existed between the parents which could be construed to effectively re-establish the presumption of legitimacy.
It is well established that at common law the father is under no legal obligation for the support and maintenance of his illegitimate child. Home of the Holy Infancy v. Kaska, 397 S.W.2d 208 (Tex. Sup.1965); Lane v. Phillips, 69 Tex. 240, 6 S.W. 610 (1887); Beaver v. State, 96 Tex.Cr.R. 179, 256 S.W. 929 (1923); and G________ v. P________, 466 S. W.2d 41 (Tex.Civ.App.San Antonio 1971, writ ref'd n. r. e.). Also, it is the majority view of the courts that, absent legislation on the subject, the father of an illegitimate child cannot be required to support his child. 30 A.L.R. Anno. Illegitimate Duty to Support, 1069, 10 Am.Jur. 2d, Bastards § 68; 10 C.J.S. Bastards § 18. There is no Texas statute requiring the natural father to support and maintain his illegitimate child. The Texas courts, have uniformly held that a father is not under a common law or statutory duty to support his illegitimate child. See G________ v. P________, supra, and cases cited therein.
With respect to the particular basis upon which a father's liability to the mother of an illegitimate child may be grounded, we note the following language set out in 8 Tex.Jur.2d Bastardy § 13, Duty to Support, at p. 530:
"Texas has no statutory bastardy proceeding so common to many of the states. The father might be liable to the mother, for special damage, in a proper case, as for breach of promise ..., but this is the mother's action and not the child's. It is not `support'."[1] (emphasis added)
It is thus recognized that, although a father may be held liable for "special damages," *478 a different rule may be applicable as to an alleged obligation for child support. Further, we deem it significant that the two contracts involved in the suit from which this appeal arises were each entered into for different purposes and are treated separately in all essential respects. The "Agreement For Child Support" is confined to the subject of support of the child, and the subsequent contract designated as "Settlement Agreement" deals strictly with subjects other than child support, including an asserted claim by the appellee for an "alleged breach of promise of marriage." Also, under the "Settlement Agreement," the appellee expressly releases all claims and causes of action against the appellant, specifically providing that the only remedy appellee shall have for breach of the "Settlement Agreement" is to enforce the payment of the specific sum recited as the consideration therefor. The agreement further provides that the "Settlement Agreement" in no way affects, alters or in any manner changes the obligations of the appellant to make the child support payments set forth in the parties' previous "Agreement For Child Support," and that appellee's remedies under the support agreement "are in no manner controlled or affected by this release and settlement." Thus, the two contracts are completely segregated, one not being dependent upon the other for any purpose. Also, it is noted that the court made separate findings and entered separate and unrelated awards in its judgment with respect to each of the two contracts, one dealing with appellee's claims on matters other than support and the other dealing with wholly support. The appellant here is challenging only that part of the judgment dealing with the support contract on the grounds that he is not legally obligated for the support and therefore recovery under the contract is unenforceable.
It is well settled that there can be no recovery under a contract unless it is supported by adequate consideration, which requires that there be either a benefit to the promisor or a detriment to the promisee. Under the established law in Texas, prior to the execution of the agreement for child support, there existed no legal obligation for the father to support his illegitimate child. Also, prior to the execution of the agreement, the mother had custody of the child, and she was the one burdened with the legal obligation to support it. After the appellant had executed the agreement, he had only promised to do something that was not his legal obligation. Additionally, since the agreement to support ran to the mother, it was merely a promise to do something that she, and not the appellant, was legally bound to do. Thus, the appellant gained no legal benefit by virtue of the agreement. Further, under Texas law, after the appellee executed the agreement, she suffered no detriment, for by this contract she assumed no greater legal obligation than she already had, i. e., that which is associated with the mere support and maintenance of the child. Even the recitation in the agreement to the effect that the contract would be the basis of all child support obligations of the appellant did not change her status with respect to her expectations for child support, for, in the light of the authorities above cited, she had no legal right to expect or obtain any support from the appellant. Thus, when she made such agreement, she gave up no right and thereby suffered no detriment. In a legal sense, the appellant gained nothing and the appellee lost nothing in the transaction.
It has been generally held that in the absence of any statutory obligations on the father to support his illegitimate child, his express promise to the child's mother, who is legally bound to support it, to pay for the maintenance of the child, resting alone on his natural affection for the child and his moral obligation to support it, is a promise which the law cannot enforce for want of legal consideration. See 30 A.L. R., supra, and Illegitimate Child-Support Agreement, 20 A.L.R.3d 500 (1968). Further, in Texas, a moral obligation is not *479 regarded as sufficient consideration for support of a contract. McBride v. McBride, 256 S.W.2d 250 (Tex.Civ.App. Austin 1953, no writ). Also, see 13 Tex. Jur.2d Moral Obligation § 68.
Appellee takes the position that the contract, which is the basis of the suit, contained within its terms an acknowledgement of consideration by the appellant and that he is estopped from contradicting such assertion and statement. Under the theory of estoppel by contract relied upon by appellee, a person is estopped to deny the truth of the matters agreed upon as consideration for the execution of the contract. This contract recites what the appellant's consideration is"That I ... do acknowledge that" [the named child] born to [appellee] "is my child and I am therefore, and in consideration thereof, entering into the following agreement...." (emphasis added). Under the theory of "estoppel by contract" a party to the contract is estopped to deny the truth of the facts as stated in the contract. The appellant does not seek to deny the facts recited. These undenied facts relative to the consideration are not sufficient consideration in law to support his promise, for they, in effect, obligate him to support his illegitimate child which he is not legally obligated to do. In effect, the recited consideration is a recognition of his moral obligation which in law is insufficient to support the contract. Thus, we find no merit in appellee's contention that estoppel by contract is applicable in the instant case.
By reason of the absence of a Texas statute imposing the legal obligation upon the father to support his illegitimate child, the continued uniform recognition of the long established rule of the common law, and the recent consideration by our Supreme Court in Home of the Holy Infancy v. Kaska, supra, regarding the standing of the father of an illegitimate child and its positive pronouncement that the father is not under a common law or statutory duty to support his illegitimate child, we must hold that the "Agreement For Child Support" is unenforceable by reason of absence of consideration as a matter of law. This conclusion renders unnecessary our consideration of appellant's other point of error. As to whether a recognized moral duty of a father to support his illegitimate child should be converted into a legal one whereby the courts can compel its performance is a proper subject for legislative consideration.[2]
The judgment of the trial court is reversed and here rendered that appellee take nothing by her suit on the child support agreement.
NOTES
[1] Citing Lane v. Phillips, supra, which discusses the absence of any law requiring support by a father of his illegitimate children.
[2] See 6 Baylor Law Review 520 (1954).