INTERNATIONAL AIRCRAFT SALES,
INC., et al., Appellants,

v.

Lionel BETANCOURT et al., Appellees.

No. 1367.

Court of Civil Appeals of Texas,
Corpus Christi.

May 31, 1979.
Rehearing Denied June 13, 1979.

Ron W. Armstrong, Lee Arnett, Brownsville, for appellants.

Gordon L. Briscoe, Harlingen, for appellees.

OPINION

YOUNG, Justice.

In this appeal arising from a suit on a note, the primary issue is whether the defendants established as a matter of law their defense of illegality of the origin of the note. Vendors of electronic components, Lionel Betancourt and John Phillips, appellees, sued International Aircraft Sales, Inc., and vendees, Raymond Kyral, Jr., and George Whitley, all appellants, on a $147,-196.00 negotiable note which represented the balance due for goods received. Defendants answered asserting three defenses: 1) want of consideration because the components were, in effect, consigned to Kyral and Whitley rather than sold to them; 2) fraudulent inducement to sign the note herein; and 3) unenforceability of the note because it arose out of an illegal transaction, i. e., smuggling.

Trial was before a jury. The only issues considered by the jury dealt with the first and second of the above defenses. The remaining illegality defense was not submitted to the jury since the appellants considered it to be established as a matter of law. The jury found that the transaction here was a sale and that the appellees did not fraudulently induce the appellants to sign the note. Appellants moved that the court enter judgment in their favor based upon the illegality defense. The trial court, however, overruled the defendants' motion and entered judgment for the appellees. This appeal by the defendants followed on only one point of error; namely whether the illegality defense was established as a matter of law.

In the early part of 1975, Kyral and Whitley began smuggling television sets, stereos and other electronic components by airplane from Brownsville, Texas, to various places in Mexico. Sometime later, Betancourt and Phillips were introduced to Kyral and Whitley through a mutual friend. Betancourt and Phillips, who were already engaged in the sale of electronic components in San Benito, Texas, worked out an arrangement to sell Kyral and Whitley the

components to be smuggled into Mexico. Betancourt and Phillips were to order the merchandise from their suppliers and have it delivered in San Benito. Then, according to the instructions of Kyral and Whitley, they (Betancourt and Phillips) were to remove the electronic components from their cartons, cut the cartons apart, and put the cartons, inside out, back around the components. The cartons were then to be wrapped in brown kraft paper and the insignia "K & W" was to be written on the outside. Whereupon Betancourt and Phillips were then to make up 1,200 to 1,400 pound airplane loads of these rewrapped units and deliver them to Kyral's warehouse in Brownsville. Generally, Betancourt and Phillips were also to decide which components would comprise each load.

Betancourt and Phillips also were to arrange their invoices and other documentation so as to facilitate the smuggling of the goods into Mexico. Kyral and Whitley then stamped these documents to show that the goods had been exported so that Betancourt and Phillips would not be liable for any state sales tax.

The parties stipulated that it was illegal to ship this merchandise into Mexico. They also stipulated that Betancourt and Phillips knew that the merchandise in question was to be exported to Mexico and sold in Mexico. And the evidence is undisputed that Betancourt and Phillips knew that this was an illegal enterprise in Mexico. They also knew that Kyral had had an airplane confiscated in Mexico and that there was a substantial risk of having shipments confiscated.

Deliveries began in late 1975. Kyral and Whitley had told Betancourt and Phillips that they would be receiving their money about ten days from delivery. The payment would be in the form of checks written on a Mexican bank. During 1975, payments were made in five or ten days from delivery and everything went according to plans. In 1976, though, it began taking fifteen days or more for payment. On March 8, Betancourt and Phillips were notified that a Mexican check given to them as payment was worthless; as it turned out, every check they had received since January 8, 1976, was worthless. Those bogus checks caused their bank account to be overdrawn in an amount exceeding $200,-000.00. Apparently, the purchasers in Mexico were paying for the smuggled goods with worthless checks, and Kyral and Whitley consequently ran out of money. Kyral then told Betancourt and Phillips that the checks would be taken care of in a few days. Over a period of about four weeks, Kyral did pay some of the checks, but only to the extent of $110,000.00.

In order to cover their resulting overdraft at the bank, Betancourt and Phillips executed a note to their bank in San Benito. Betancourt and Phillips then entered into a series of discussions and visits with Kyral in which payments on the dishonored checks were discussed. At one point, Kyral was asked to sign as surety of the note executed in favor of the bank. But he refused to do this. After a series of further discussions concerning how to take care of the dishonored checks, Betancourt and Phillips directed their attorney to draw up a negotiable note and two security agreements covering the four airplanes that Kyral and Whitley were using to transport the electronic components into Mexico.

On June 10, 1976, Betancourt and Phillips drove to Brownsville to meet with Kyral and Whitley. When Betancourt and Phillips arrived, Whitley was not yet present, so Betancourt and Phillips discussed the terms of the note and security agreements with Kyral. The evidence is undisputed that these discussions were directed toward honoring the checks. When Whitley arrived, both he and Kyral privately discussed the terms of the note and security agreements. After about ten minutes of deliberation, they met again with Betancourt and Phillips and each signed the note. Further, Kyral signed the security agreement as to two of the airplanes because they were in his name, and signed the security agreement in the name of International Aircraft Sales, Inc., as to the two other airplanes because they were registered as owned by

that corporation. Kyral later paid Betancourt and Phillips $8,000.00. No other payments were made and this suit followed.

■ At the trial, the note and security agreements made the basis of this suit were introduced without challenge. Thus, the plaintiff appellees made out a prima facie case of validity of the instruments. *Hager v. Texas Distributors, Inc.,* 560 S.W.2d 773, 775 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). It was then the appellants' burden at trial to prove the illegality of the note. *McKenzie v. Carte,* 385 S.W.2d 520, 529 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.).

To determine whether the appellants have met their burden of establishing their illegality defense as a matter of law, we will first consider whether the agreement preceding the note herein was legal and then whether the illegality of the transaction tainted the note herein.

■ If a contract or sale is made with a view of violating the laws of another country, though not otherwise obnoxious to the law either of the forum or of the place where the contract is made, it will not be enforced. 15 Williston on Contracts, § 1748 (3rd ed. 1972), Restatement of Contracts, § 592 (1932); *Rutkin v. Reinfeld,* 229 F.2d 248, 255 (2nd Cir.), *cert. denied,* 352 U.S. 844, 77 S.Ct. 50, 1 L.Ed.2d 60 (1956). In applying this rule to cases of sales, however, the mere knowledge by a vendor of an intent on the part of the vendee to use the goods for an unlawful purpose will not bar recovery by the vendor on the contract of sale, but if the vendor in any way aids the vendee in his unlawful design to violate the law, such participation will render void the contract of sale and will bar recovery by the vendor. *Stone v. Robinson,* 203 S.W. 1132 (Tex.Civ.App.—Amarillo 1918, no writ); 15 Williston on Contracts, § 1755 (1972), Restatement of Contracts, § 602 (1932). The Restatement of Contracts, § 602, illustrates the above rule in the following example, to-wit:

"2. In a State where the sale of certain plants is legal, A sells a quantity of them to B who desires to transport them to a State where quarantine regulations forbid their importation. In order to aid B in getting the goods to the desired place, A packs and marks them so as to conceal their character. The bargain is illegal and A cannot recover the price."

The facts of the instant case are closely similar to the above example. Here, Betancourt and Phillips removed the components from their boxes and rewrapped them so as to conceal their true identity. Moreover, they separated the components into lots of 1,200 to 1,400 pounds each so that they might be flown over the border illegally. And finally, Betancourt and Phillips filled out their invoices and other documentation so as to facilitate the smuggling of the items into Mexico. In addition to this, the evidence is conclusive that Betancourt and Phillips knew that the shipment of these goods into Mexico was illegal. We think the evidence is conclusive that the original agreement of sale between Betancourt and Phillips and Kyral and Whitley was illegal and not enforceable in a court of law.

■ Next we observe that promissory notes given in connection with a contract which is illegal are ordinarily not enforceable as between the parties to such instruments. *Reed v. Brewer,* 37 S.W. 418 (Tex. Sup.1896); *Scoggins v. Furst & Thomas,* 9 S.W.2d 405 (Tex.Civ.App.—Texarkana 1928, writ dism'd w. o. j.). The test of whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case. *Floyd v. Patterson,* 72 Tex. 202, 10 S.W. 526, 527 (1888); *Hall v. Edwards,* 222 S.W. 167, 168 (Tex.Comm'n App.1920, jdgmt. adopted); *Gulf Collateral, Inc. v. Cauble,* 462 S.W.2d 619, 622 (Tex.Civ. App.—Fort Worth 1971, no writ). Stated another way, in *Cauble,* the test is this:

"[I]f the tainted transaction has been completed, and another grows out of it collateral to it, *dependent upon a new consideration,* the new contract is not vitiated by the taint of the old one, and will be enforced."

Though the appellees here were able to prove their case without referring to the illegal transaction, the appellants were not prevented from proving that the note was in some respect illegal or based upon an illegal consideration. See *Scoggins v. Furst & Thomas,* supra; 17 Am.Jur.2d, Contracts, § 219 (1964). We find the evidence to be undisputed that the transaction herein had not been completed in that Betancourt and Phillips delivered the electronic components, but had received worthless checks in payment. The appellants never did pay the debt but rather merely substituted one form of negotiable instrument, the note, for the earlier forms, the checks. The appellants did extend additional security to the appellees by giving them a security interest in the airplanes, but we find no evidence of the appellees giving any new consideration for the security agreements. Tex.Bus. & Comm.Code Ann. § 3.408 (1968). Such illegal consideration would render the note unenforceable. *Scoggins v. Furst & Thomas,* supra.

Kyral stated that his reason for signing the note was to "help" Betancourt and Phillips withstand their banker's pressure to pay up. There is a clear distinction between the motive inducing the execution of a contract and the consideration, though. One's motive does not amount to consideration. *Hoffer v. Eastland Nat. Bank,* 169 S.W.2d 275, 281 (Tex.Civ.App.—Eastland 1943, no writ). All of the other evidence bearing on the relation between the note and the illegal contract conclusively indicates that the note arose out of the appellants' failure to pay for the goods delivered.

During trial, Betancourt was asked whether the note was a part of the entire series of dealings he had with Kyral and Whitley. He answered, "Yes, sir." Phillips stated at trial that on the day Kyral and Whitley signed the note Betancourt and Phillips showed them the bounced checks and asked for the note to be signed. When Kyral was asked to describe what happened prior to the signing of the note, he stated, "Basically, they were wanting their money. They wanted those checks made good. And it went on then to the note signing. And somehow the airplanes for collateral got brought up into the conversations." We think a mere change in the evidence of obligation does not validate that which is invalid. *Sturdevant v. Falvey,* 176 S.W. 908, 911 (Tex.Civ.App.—El Paso 1915, writ ref'd). Consequently, we find the instant note to be tainted by the illegal contract and therefore unenforceable.

Appellees argue that the appellants had a moral obligation to pay for the goods delivered in spite of the illegal consideration and that the moral obligation is sufficient consideration for the contract. We disagree. Generally speaking, a moral obligation is not regarded as sufficient consideration to support a contract. *C_____ v. W_____,* 480 S.W.2d 474, 478 (Tex.Civ.App.—Amarillo 1977, no writ); 13 Tex.Jur.2d, Contracts, § 68 (1960). In some limited circumstances, however, a moral consideration is deemed adequate consideration when the promise is to pay a debt based upon an antecedent consideration which the debtor is exempted from by virtue of a positive rule of law. *Simpson v. Williams Rural High School Dist.,* 153 S.W.2d 852 (Tex.Civ.App.—Amarillo 1941, writ ref'd). Most cases, though, which follow this rule are those cases involving contracts not involving serious moral turpitude, e. g., debts barred by limitations and bankruptcy. *Simpson,* supra. See 1 Williston on Contracts, § 150; Restatement of Contracts, §§ 8690, 535 (1932).

The parties herein were engaged in a course of conduct which directly conflicts with the laws of Mexico and thereby involves serious international overtones. We think this smuggling scheme was of such consequence that the public interest would be jeopardized by the enforcement of such contracts, and we think a note arising out of such contract cannot been enforced. See 1 Williston on Contracts, § 150 (1957).

Appellees further contend that the appellants waived the illegality ground of defense in that they did not submit it to the jury. In light of the above discussion, that

the defense was conclusively established, it did not need to be submitted to the jury in order to be preserved for appeal. Rule 279, T.R.C.P. Appellants' point of error is sustained.

■ The record reflects that the appellants' property has been sequestered. In light of our decision finding no enforceable debt, the appellants are entitled to have the property restored to their possession. *Spicknall v. Panhandle State Bank of Borger,* 278 S.W.2d 622 (Tex.Civ.App.—Amarillo 1954, no writ); *Rea v. P. E. Schow & Bros.,* 42 Tex.Civ.App. 600, 93 S.W. 706 (1906, no writ); 52 Tex.Jur.2d, Sequestration, § 98 (1964).

The judgment of the trial court is therefore reversed in part and judgment is here rendered that appellees take nothing in their action on the note. But that part of the judgment of the trial court denying the appellants' counterclaims is affirmed.

Reversed and rendered in part, and affirmed in part.